Merchants Union Trust Company, Successor to The Union Trust Company, a corporation incorporated under the laws of the Commonwealth of Pennsylvania, Trustee named in a certain Indenture of Mortgage dated the tenth day of June, A. D. 1905, executed by New Philadelphia Graphite Company, a corporation of the State of New Jersey, and Hiram C. Himes, Charles L. Reid and Edmund B. Seymour, Trustees for the Bondholders of New Philadelphia Graphite Company under Deed of Trust dated the twelfth day of December, A. D. 1910,

*vs.*

New Philadelphia Graphite Company, a defunct corporation of the State of New Jersey, Keystone Graphite Company, a corporation of the State of Delaware, Sarah Corbit Curtis, Executrix under the last will and testament of Frederick William Curtis, deceased, Frederic D. Chester and Chester Graphite Company, a corporation of the State of Pennsylvania.

*New Castle, May* 23, 1912.

After notice and demand, a mortgagee may recover rents from a lessee who holds under a lease made prior to the mortgage; but, as against a lessee from the mortgagor subsequent to the mortgage, the mortgagee cannot recover rent, unless an authority to that effect is contained in the mortgage, because there is no privity of contract or estate between the mortgagee and the tenant.

A party, to recover on a contract, must be the person from whom the consideration of the contract actually moved; and a stranger to the consideration cannot sue on the contract.

A trust company, as mortgagee for the benefit of first mortgage bondholders, in possession after foreclosure, filed a bill seeking to recover rent against the lessee of the mortgagor's grantee, who had covenanted to pay to his lessor an annual rental of $3,500, of which $3,000 was to be paid to the trust company as mortgagee, and the remaining $500 to the lessor, but showed no covenant by the lessee with it, and no consideration for the covenant furnished by it either to the lessor or the lessee, or any privity between itself and the lessor or the lessee. *Held*, on demurrer, that for want of privity of contract or estate between the mortgagee and the lessor or lessee the bill stated no equity entitling the mortgagee to payment of any part of the rent reserved by the lease.

Where a bill by a mortgagee against the lessee of the mortgagor's subsequent grantee, to recover rent resrved to the grantee as lessor, $3,000 of which was to be paid to the mortgagee and the balance retained by the lessor, did not show that the lessor received any property or benefit from the mortgagee, in consideration of which it promised or became liable to pay over the rent to the mortgagee, nor any agreement of the lessor with the lessee or the mortgagor to pay rent, the mortgagee could not recover; the mere fact of the mortgagor's debt or the mortgagee's legal rights against it not constituting such an obligation on the part of the lessor, who purchased subject to the mortgage, as to entitle the mortgagee to enforce the covenant for rent for its own benefit.

To give a third party an action on a promise, there must be an intent by the promisee to secure some benefit to the third party, and also some privity between the promisee and the third party, and some obligation of the promisee to the third party which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from the promisee.

Lessees of a mortgagor's grantee, who took subject to the mortgage, covenanted to pay rent to their immediate lessor, $3,000 of which was to be paid to the mortgagee and the balance retained by the lessor; there being no consideration moving from the mortgagee to the lessor, and no promise by either the lessees or the lessor to pay rent to the mortgagee, and no intention of the lessees to constitute themselves trustees for the

mortgagee. *Held*, in view of the power of the lessor and the lessees to have canceled the lease, before its assignment, that no trust was established against the lessees in favor of the mortgagee.

A mortgagor of premises containing deposits of graphite subsequently conveyed them, subject to the mortgage, and the grantee leased them by a lease providing that the lessee should manufacture graphite on hand and pay to the lessor a royalty of ten per cent., and also a like royalty on graphite mined and sold, and that the lessee should pay taxes on the premises. No consideration for such covenant moved from the mortgagee to the lessee. *Held*, on bill by the mortgagee in possession after foreclosure against the lessee, that as the covenants were not made to the mortgagee, and there was no privity of contract or estate between it and the lessee, it was not entitled to an accounting, to damages for waste, nor to a decree for the lessee's payment of unpaid taxes.

A mortgagee, for the protection of his security, is entitled to enjoin the mortgagor or his grantee from waste imperiling his security.

A mortgage on land in Pennsylvania, by the law of that State, vests no title or estate in the mortgagee before foreclosure, but is only security for the debt.

A party is not bound by a covenant running with the land unless he is a party to it, or privy in estate with the original covenantee; and hence such covenants in a mortgage under which the mortgagee has no title or estate before foreclosure, are not binding upon a lessee of the mortgagor's assignee.

The right of equitable relief in favor of a grantor who has attached to the land an agreement as to its use by his grantee, though such agreement does not run with the land, as against a purchaser with notice, is confined to agreements or covenants restricting the mode of using the land.

Covenants by the mortgagor of property containing graphite for the payment of interest and for the payment to the mortgagee of a percentage of net earnings, are not restricted in their character, and are not enforceable by the mortgagee against a lessee from a purchaser from the mortgagor.

DEMURRER TO A BILL OF COMPLAINT: Heard by the Chief Justice, the Chancellor having certified his disqualification to hear the cause.

The facts appear in the opinion sustaining the demurrer.

*Ward, Gray and Neary* and *E. B. Seymour*, of the Philadelphia Bar, for the complainants.

*Anthony Higgins* and *James C. Sellars*, of the Philadelphia Bar, for the defendants Sarah Corbit Curtis, Executrix of the last will and testament of Frederic William Curtis, deceased, Frederick D. Chester and Chester Graphite Company.

THE CHIEF JUSTICE. This case is before the court on demurrer to the complainants' bill, the material allegations of which may be briefly stated, as follows:

The New Philadelphia Graphite Company being the owner of certain lands in Chester County, Pennsylvania, some in fee and others under lease for years, mortgaged the same on June 10, 1905, to the Union Trust Company, to secure an issue of bonds of $50,000. Afterwards, in March, 1908, the said New Philadelphia Graphite Company, by indenture, conveyed the mortgaged lands and premises to the Keystone Graphite Company, a corporation of the State of Delaware. On April 1, 1908, the Keystone Graphite Company, by indenture, leased the said lands and premises to Frederick William Curtis and Frederick D. Chester, who, on June 12, 1908, made an assignment of the lease to the Chester Graphite Company. The lease contains the following covenant by Curtis and Chester:

"The lessees shall pay to the party of the first part an annual rental for the said term of thirty-five hundred dollars, payable semi-annually in advance on the thirtieth day of September and thirty-first day of March in each year. Three thousand dollars of said sum to be paid to The Union Trust Company of Philadelphia for the benefit of the first mortgage bondholders of the New Philadelphia Graphite Company and five hundred dollars of the balance of said rental to be paid to the party of the first part for the general purposes of said lessors."

Paragraph twelve of the bill sets forth section eight of the lease, as follows:

"The lessees shall manufacture, separate and refine any graphite now on hand belonging to the party of the first part either on the said leased premises or on the premises of the party of the second part and pay to the lessors ten per cent. of the value of all of said graphite when so manufactured and marketed as aforesaid. And further the said lessees shall pay to the party of the first part ten per cent. of the sale price of all graphite mined on the said demised premises and manufactured there or

elsewhere during the term of this lease. Such royalties to be payable and be paid to the party of the first part semi-annually on the first day of October and on the first day of April of each year. For the purpose of ascertaining and paying said royalties, the lessees shall keep or cause to be kept true and accurate books of account showing the production and sale of graphite from the said land, which books shall be kept open and free to the inspection of the manager of the party of the first part at all times."

Paragraph thirteen of the bill sets forth section ten of the lease, as follows:

"The lessees shall also further pay all rates, taxes and assessments, payable in respect of the premises and plant hereby demised, and produce receipts for such rates and taxes from time to time to be paid in addition to all rentals and royalties herein when called upon to do so. Said rates, taxes and insurance to be paid in addition to all rentals and royalties herein otherwise reserved."

Paragraph twenty-four of the bill alleges as follows:

"The graphite on said premises is a material part of the complainants' security under said mortgage, and the graphite having been mined and taken away from the said premises without the payment of the stipulated rent agreed to be paid to the said The Union Trust Company, for the benefit of the bondholders as aforesaid and without the accounting and the payment of the royalties provided for in the said lease and by reason of the respondents permitting taxes to become in arrear and a lien to be filed therefor, the said mortgaged premises have been depleted and wasted, to the irreparable injury of the complainants and the holders of the bonds secured by the said mortgage:"

Paragraph eleven of the bill alleges, that although demand had been made upon Curtis in his lifetime, and upon his executrix since his death, and upon Chester and the Chester Graphite Company by the complainants, none of them has paid to the complainants, or to any of them, the sum of fifteen hundred dollars, due on October 1, 1910, for the benefit of the first mortgage bondholders of the New Philadelphia Graphite Company, in accordance with the terms and conditions of the lease; nor has any of them paid to complainants, or any of them, any portion of the rental accruing subsequently to October 1, 1910, and continuing until December 21, 1910, under said lease.

Merchants Union Trust Co. *vs.* New Phila. Graphite Co. 23

Opinion.

Under the terms of the mortgage, the principal of the bonds became due and payable April 1, 1910. The New Philadelphia Graphite Company and the Keystone Graphite Company have defaulted in the payment of the principal of the bonds, and no interest has been paid thereon since the first day of April, 1910. Also under the terms of the mortgage The Union Trust Company, as mortgagee and trustee on behalf of the bondholders, on December 21, 1910, sold and conveyed the mortgaged premises to Hiram C. Himes, acting on behalf of all the bondholders of the New Philadelphia Graphite Company, for the sum of five thousand dollars. On December 21, 1910, the bondholders of the New Philadelphia Graphite Company conveyed to Hiram C. Himes, Charles L. Reid and Edmund B. Seymour, as their trustees, all their right, title and interest in the said bonds, and agreed, in the event of the purchase of the property by The Union Trust Company at the forthcoming foreclosure sale, to convey to the said trustees all their right, title and interest in and to the premises. A copy of this deed is annexed to the bill, marked "Exhibit C." On January 11, 1911, The Union Trust Company was merged in and consolidated with the Merchants Trust Company, another Pennsylvania corporation, under the title of Merchants Union Trust Company, which thereupon succeeded to all the rights and powers of The Union Trust Company, including those under the said mortgage. On January 20, 1911, the said Merchants Union Trust Company, successor to said The Union Trust Company, trustee as aforesaid, in pursuance of the authority of said mortgage, and in furtherance of the sale, by deed of assignment and conveyance, granted to Hiram C. Himes, Charles L. Reid and Edmund C. Seymour all the estate of the New Philadelphia Graphite Company and the Keystone Graphite Company in and to the said lands and premises.

Paragraph twenty-one of the bill avers that the royalty provided for in section eight of said lease had not been accounted for and paid over to the Keystone Graphite Company on October 1, 1910, or at any subsequent time prior to the filing of the bill, and also avers the refusal on the part of Mr. Curtis, during his lifetime, and his executrix since his death, Frederick D.

Chester and Chester Graphite Company to make such accounting and payment. Paragraph twenty-two of the bill avers that the taxes have not been paid by the defendants, as provided for in said lease. Paragraph twenty-three of the bill avers that Mr. Curtis, in his lifetime, and his executrix since his death, together with the said Chester owned the controlling interest in the Keystone Graphite Company and the Chester Graphite Company, and that, by reason of such ownership, Curtis in his lifetime and his executrix since his death, and the said Chester, have restrained said Keystone Graphite Company from taking any action to secure an accounting and the payment of the rentals, royalties and taxes due under the terms of said lease, and have caused the Chester Graphite Company to refuse to make any payment of either the stipulated sum provided for under section seven of said lease, or the amount apportionable from October 1, 1910, to December 21, 1910, or for the accounting or the payment of the royalties due under section eight of the lease, or for the payment of the rates, taxes and assessments under section ten of the lease.

The bill filed by the complainants is, in effect, the bill of a mortgagee in possession (after foreclosure proceedings) against the lessees of the assignee of the mortgagor, and prays for the the payment by Curtis' executrix, Chester and the Chester Graphite Company, to the complainant, Merchants Union Trust Company, as trustee under the mortgage fifteen hundred dollars, being interest at six per cent., due October 1, 1910, six hundred and twenty-five dollars, interest at six per cent. on fifty thousand dollars for two months and twenty-one days under section seven of the lease; that an account be taken for what is due for royalties under section eight of the lease; that the said respondents be decreed to pay the taxes; that the said respondents and also the Keystone Graphite Company be directed to pay to complainants, for the benefit of the bondholders of the New Phildelphia Graphite Company, the amount which shall be found to be due on said account, together with costs, and that the respondents be decreed to pay for the waste of the mortgaged premises, and the damages arising from a confederation among them during a period

·Merchants Union Trust Co. *vs.* New Phila. Graphite Co. 25

Opinion.

in which the mortgagee could not recover possession of the premises.

The demurrer of Sarah Corbit Curtis, as executrix of Frederick William Curtis, Frederick D. Chester and the Chester Graphite Company, sets forth the following causes of demurrer:

First. That the complainants have not in and by their said bill of complaint made or stated such a case as calls for (1) the payments alleged by said bill to be due to the Merchants Union Trust Company, as trustee for the first mortgage bondholders of New Philadelphia Graphite Company, either for rental or for interest; (2) for any account for royalties alleged to be due said Trust Company as trustee as aforesaid, under the provisions of section eight of the lease, marked "Exhibit B", or for the payment of any amount, which said bill alleges would be found to be due on said accounting; (3) or for the payment to the Commonwealth of Pennsylvania, to the tax colector of West Pikeland County, and to the Receiver of Taxes of Chester County, of the several sums alleged to be due to them, respectively, for taxes due on said demised premises, together with any penalties or costs thereon, for the reason that the complainants have shown no title to maintian this suit.

Second. For the reason that it appears by the bill that there is no intent by the Keystone Graphite Company to secure any benefit to the complainants by reason of the covenant of the lessees, Curtis and Chester, contained in article seven of said lease, and set forth in paragraph seven of the said bill.

Third. For the reason that it appears by the bill that there is no privity between said complainants and the Keystone Graphite Company, respondent, the covenantee in said covenant, and no consideration moving from the said complainants to the said Keystone Graphite Company, respondent, to enable said complainants to call on these defendants for any payment of any debt or royalties to the complainants from these respondents, or for the payment of any taxes to the aforesaid officials.

Fourth. That it appears by the bill that there is no privity between said complainants and said three respondents, and no

consideration moving from said complainants to the said three respondents, or any of them, to enable said complainants to call on these respondents for any payment of any debt or royalties to the complainants from these respondents, or for the payment of any taxes to the aforesaid officials.

Fifth. That the complainants have not, in and by their said bill, made or stated such a case as entitled them, or any of them, in a court of equity, to discovery or relief from or against the said respondents or any of them touching the matter contained in said bill.

Sixth. That under section eight of the lease, annexed to the bill of complaint and marked "Exhibit B," the right of the lessees to mine graphite on the premises therein demised is not dependant as a condition upon an account and payment of royalties, as therein provided for; and that the said mortgaged premises have not been depleted and wasted by mining graphite and taking the same away from the said premises in accordance with the terms of said lease.

Seventh. That the complainants are not entitled to sustain their bill against the said respondents, or any of them, for the reason that the complainants have a full, complete and adequate remedy at law.

The first question to be determined is whether the bill can be sustained because of the covenant by the respondents, Curtis and Chester, to pay to the lessor a certain annual rental, three thousand dollars of which was to be paid to the Trust Company, the complainant, for the benefit of the first mortgage bondholders of the New Philadelphia Graphite Company. It is to be noted that the entire rental was required to be paid, by the terms of the lease, to the party of the first part, which was the Keystone Graphite Company. There was no covenant on the part of the lessees to pay the rental, or any part of it, to the Trust Company mortgagee. The agreement of the lessees was with the Keystone Graphite Company, the assignee of the mortgagor, and the consideration for their undertaking was not made or furnished by the complainants.

Even if the New Philadelphia Graphite Company, the party that executed the mortgage, or deed of trust, had been the

Merchants Union Trust Co. *vs.* New Phila. Graphite Co. 27

Opinion.

lessor, it is by no means certain that the mortgagee could sustain a bill praying that the lessees be decreed to pay to it the rent made payable to the lessor. But in this case the lessor is the assignee of the mortgagor, and the complainants have not shown that there was any privity between the Keystone Graphite Company and the Trust Company, or any consideration moving from the Trust Company to the Keystone Company. Still less has it been shown that there was any privity between the respondents, Curtis and Chester, as lessees and covenantors, and the Trust Company, mortgagee, or any considreation moving from the Trust Company to the said covenantors. While a mortgagee may, after notice and demand, recover rents and profits from a lessee who holds under a lease made prior to the mortgage, there is a clear and well settled distinction in the law between a lease made by the mortgagor prior, and one made subsequent, to the mortgage. In the latter case the mortgagee cannot distrain, or sue for rent unless an authority to that effect is contained in the mortgage, because there is no privity of contract or estate between the mortgagee and the tenant. 4 *Kent's Comm.* 165; *notes to Moss v. Gallimore, Doug.* 279; 1 *Smith's Leading Cases,* 627 (6th Ed. 972-976); *Evans v. Elliot,* 9 *Adol. & El.* 342; *Mayo v. Shattuck,* 14 *Pick.* (*Mass.*) 525, 533; *In re Crope & Co.,* [1911] L. R. 2 Ch. 224; 1 *Jones on Mortgages,* §§774-777; *Russell v. Allen,* 2 *Allen* (*Mass.*) 42; *Mirick v. Hoppin,* 118 *Mass.* 582; *McKircher v. Hawley,* 16 *Johns.* (*N. Y.*) 290.

The last mentioned case contains a very full and clear exposition of the law upon this subject, including a reference to the leading authorities, and it is not necessary for me to discuss the subject further, or cite additional authorities. It is a general rule, that a plaintiff must be the person from whom the consideration of the contract actually moved, and that a stranger to the consideration cannot sue on the contract; or, as it is sometimes expressed, there must be a privity of contract between the plaintiff and defendant in order to render the defendant liable to an action, by the plaintiff, on the contract. *Mellen v. Whipple,* 1 *Gray* (*Mass.*) 317; *Morrison v. Beckey,* 6 *Watts* (*Pa.*) 349.

28 Merchants Union Trust Co. *vs.* New Phila. Graphite Co.

Opinion.

There are certain exceptions to this general rule ,which the court in *Mellen v. Whipple* classifies under three heads. But the case before me is not within any of those exceptions. In *Bank v. Rice*, 107 *Mass*. 37, 9 *Am. Rep*. 1, the court recognized the soundness of the rule, and said:

"The recent decisions in this commonwealth and in England have tended to uphold the rule and to narrow the exceptions to it."

In view of the law above stated, I am constrained to hold that there is no privity of contract, or estate, shown to have existed between the mortgagee and the lessees, or lessor, which would entitle the former to a decree for the payment of any part of the rent reserved in the lease. The bill does not allege that the lessors received any property or benefit from the mortgagee in consideration of which they promised, or became liable, to pay any portion of the rent to the Trust Company, or that they made any agreement with said company, or with the New Philadelphia Graphite Company, its mortgagor, for the payment of the rent, or that either the mortgagor or mortgagee had any knowledge even of the covenant in the lease respecting the payment of rent. Neither does it appear that there was any debt or duty owed by the lessor, the Keystone Company, to the Trust Company, the mortgagee, or that there was any legal right in the Trust Company, the third party, founded upon any obligation of the Keystone Company, the promisee, to adopt and claim the promise as made for the benefit of the Trust Company.

The present case, therefore, differs materially from those cited by the complainants upon this point. Because there was a debt owing by the New Philadelphia Graphite Company to the Trust Company, or because the Trust Company had certain legal rights under the mortgage against the mortgagor, it does not follow that such debt was owed by the Keystone Company, who purchased the property subject to the mortgage, or that such rights could be enforced in equity against the latter company. The legal right of the Trust Company was against the New Philadelphia Graphite Company, the mortgagor, and the lands and premises covered by the mort-

gage. It had the power to foreclose the mortgage at any time after default.

It is clear that the complainants cannot recover from the lessees on their covenant to pay rent to the Keystone Company, the lessor, there being neither privity of contract or estate, nor any agency or trust shown, between the lessor and the mortgagee, which would enable the Trust Company to claim the benefit of the covenant made by the lessees.

The law upon this subject was so clearly and fully expressed in the case of *Vrooman v. Turner*, 69 *N. Y.* 280, 25 *Am. Rep.* 195, that it is hardly necessary to quote from other authorities. In that case the mortgagor conveyed premises to one Mitchell, and through various mesne conveyances the title came to one Sanborn. In none of these conveyances did the grantee assume to pay the mortgage. Sanborn conveyed the same to the defendant, Turner, by deed, which contained a covenant to pay off and discharge the mortgage, the same forming a part of the consideration. In the course of that opinion the court said:

"The rule which exempts the grantee of mortgaged premises subject to a mortgage, the payment of which is assumed in consideration of the conveyance as between him and his grantor, from liability to the holder of the mortgage when the grantee is not bound in law or equity for the payment of the mortgage, is founded in reason and principle and is not inconsistent with that class of cases in which it has been held that a promise to one for the benefit of a third party may avail to give an action directly to the latter against the promisor, of which *Lawrence vs. Fox*, 20 *N. Y.* 268, is a prominent example. To give a third party who may derive a benefit from the performance of the promise, an action, there must be, first, an intent by the promisee to secure some benefit to the third party, and second, some privity between the two, the promisee and the party to be benefited, and some obligation or duty owing from the former to the latter which would give him a legal or equitable claim to the benefit of the promise, or an equivalent from him personally.

"It is true that there need be no privity between the promisor and the party claiming the benefit of the undertaking, neither is it necessary that the latter should be privy to the consideration of the promise, but it does not follow that a mere volunteer can avail himself of it. A legal obligation or duty of the promisee to him, will so connect him with the transaction as to be a substitute for any privity with the promisor, or the consideration of the promise, the obligation of the promisee furnishing an

evidence of the intent of the latter to benefit him, and create a privity by substitution with the promisor. A mere stranger cannot intervene, and claim by action the benefit of a contract between other parties. There must be either a new consideration or some prior right or claim against one of the contracting parties, by which he has a legal interest in the performance of the agreement.

"* * * * Judges have differed as to the principle upon which *Lawrence vs. Fox* and kindred cases rest, but in every case in which an action has been sustained there has been a debt or duty owing by the promisee to the party claiming to sue upon the promise. Whether the decisions rest upon the doctrine of agency, the promisee being regarded as the agent for the third party, who, by bringing his action adopts his acts, or upon the doctrine of a trust, the promisor being regarded as having received money or other thing for the third party, is not material. In either case there must be a legal right, founded upon some obligation of the promisee, in the third party, to adopt and claim the promise as made for his benefit."

The case of *Lawrence v. Fox,* 20 *N. Y.* 268, above referred to, has been sometimes cited as an authority opposed to the rule declared in the *Vrooman-Turner Case,* but it is really not inconsistent with the decision in the latter case, because, as was said in *Lorillard v. Clyde, et al.,* 122 *N. Y.* 498, 25 *N. E.* 917, 19 *Am. St. Rep.* 470:

"All that case decides is, 'that where one person loans money to another upon his promise to pay it to a third party to whom the party so lending the money is indebted, the contract thus made by the lender is made for the benefit of his creditors, and the latter can maintain an action upon it without proving an express promise to himself from the party receiving the money.' "

The complainants, according to their original briefs, seemed to rely on two grounds in support of their bill, viz.: (1) That the covenant of Curtis and Chester respecting the payment of the rent was a declaration of trust on their part, and, as such, created them in equity trustees for the said Trust Company, the mortgagee. (2) That the Keystone Company was the agent of the Trust Company, and the lessees are therefore liable to the undisclosed principal on their contract with the agent. I have already discussed these propositions in a general way. In respect to the first ground it may be further said, that there might be some force in the argument if the

Trust Company was a creditor of the Keystone Company, and the latter company individually liable to the former, as was the Philadelphia Company. But in the absence of any consideration whatever moving from the Trust Company to the Keystone Company, and the Trust Company being mere volunteers, no trust was created, and a court of equity cannot declare one in its favor. There being no consideration moving from the Trust Company, and no promise or agreement to pay the rent, or any part of it, to the Trust Company, and no intention of the lessees shown to constitute themselves trustees, it certainly cannot be successfully contended that any trust has been established in favor of the complainants by the facts set out in the bill.

"Although two persons, for a valuable consideration between themselves, covenant to do some act for the benefit of a stranger, the stranger has not a right to enforce the covenant against the two, although each one might as against the other." *Colyear v. Mulgrave*, 2 *Keen* 81; *Meek v. Kettlewell*, 1 *Hare* 646; *Hughes v. Stubbs*, 1 *Hare* 476.

In the last mentioned case it was said:

"A man who, without communication with his creditors, puts property into the hands of trustees for the purpose of paying his debts proposes only a benefit to himself by the payment of his debts—his object is not to benefit his creditors. It would therefore be a result most remote from the contemplation of the debtor if it should be held that any creditor, discovering the transaction, should be able to fasten upon the property and invest himself with the character of a *cestui que trust.*"

The case of *Gregory v. Williams*, 3 *Mer.* 582, has been often cited to show that one of the parties to an agreement may constitute himself a trustee of the property for the benefit of the third party.

*In re Empress Engineering Co.*, 16 *Ch. Div.* 127, Lord Justice James said:

"I think it is perhaps as well that we shall say that *Gregory v. Williams* seems to be misunderstood. When that case is considered with the careful criticism with which the Master of the Rolls has examined it, it appears quite clear that there was there a transfer of property with a

declaration of trust in favor of a third person, which was a totally different thing from a mere covenant to pay money to that person."

In re *Rotherham Alum & Chemical Co.*, 25 *Ch. Div.* 103, the court used the following language:

"* * * But an agreement between A. and B. that B. shall pay C. gives C. no right of action against B. I cannot see that there is in such a case any difference between equity and common law, it is a mere question of contract. It is said that Mr. Peace has an equity against the company because the company has had the benefit of his labor. What does that mean? If I order a coat and receive it, I get the benefit of the labor of the cloth manufacturer; but does any one dream that I am under any liability to him? It is a mere fallacy to say that because a person gets the benefit of work done for somebody else he is liable to pay the person who did the work."

But the question now under consideration has been decided, in principle at least, by our own court in the case of *Waters v. Comly*, 3 *Har.* 117. In that case Waters, Laird and Ridpath gave a bond to McMakin, Burgess & Kelly for $18,690.63 to secure a debt to Kelly of $400, and the balance in trust to pay other creditors, per schedule. The court said:

"The question is whether McMakin, Burgess & Kelly can claim anything out of the proceeds of sale beyond the sum of $400, due to Kelly. If they can, it must be as trustees for the creditors mentioned in the schedule. If Waters & Laird, under the same circumstances, instead of giving the bond, had executed a deed conveying their property to McMakin, Burgess & Kelly for the payment of these debts, to which the creditors were neither parties nor privies, it would not have divested the beneficial interest of Waters & Laird, and created the real relation of trustees and *cestuis que trust* between McMakin, Burgess & Kelly, and the creditors mentioned in the schedule. (*Wallwyn v. Coutts*, 3 *Mer.* 707; *Garrard v. Lord Lauderdale*, 3 *Sim.* 12; *Acton v. Woodgate*, 2 *Myl. & K.* 495.) In *Acton v. Woodgate*, Sir John Leach says: 'The deed merely operates as a power to the trustees, which is revocable by the debtor, and has the same effect as if the debtor had delivered money to an agent to pay the creditors, and before any payment made by the agent, or communication by him to the creditors had recalled the money so delivered.' In the case of *Bill v. Cureton*, 2 *Myl. & K.* 511, the Master of the Rolls says: 'In *Wallwyn v. Coutts* and *Garrard v. Lord Lauderdale*, the character of trustee and *cestui que trust* never existed between the creditor and the trustees, for the settler himself was the only *cestui que trust;* and therefore, he was entitled to direct the application of

his own trust fund. The rule is adopted to promote the views and intentions of the parties. A man who, without any communication with his creditors, puts property into the hands of trustees for the purpose of paying his debts, proposes only a benefit to himself and not to his creditors; it would be a result most remote from the contemplation of the debtor, if it should be held that any creditor discovering the transaction, should be able to fasten upon the property and invest himself with the character of *cestui que trust.*

"The same principle would prevail if Waters & Laird had sold their property and placed the proceeds in the hands of McMakin, Burgess & Kelly, for the payment of the debts mentioned in the schedule; the latter would not by that mere fact have become liable to suit, either at law or in equity, on the part of the creditors. (*Stewart v. Fry*, 7 *Taunt. Rep.* 339; *Williams v. Everett*, 14 *East* 582; *Acton v. Woodgate*, 2 *Myl. & K.* 495; *Gibson v. M'net*, 2 *Bing.* 7.)

"In the present case there was no conveyance by deed of the property, nor payment of money to McMakin, Burgess & Kelly, but simply a bond, which is an acknowledgment of indebtedness under seal, and was designed, as the first step in a proceeding, to enable the obligees through the instrumentality of the process of the courts, to convert the property of the obligors into money for the purpose which has been stated. Before that process of conversion was completed the execution of the respondent Comly, became a lien on the property in the hands of the sheriff. It has been already stated that McMakin, Burgess & Kelly have no beneficial interest in these funds beyond the sum of $400, and it is clear that they cannot claim the balance as trustees of the creditors; for the relation of trustees and *cestuis que trust*, never had existed between them and the creditors. If the funds were to pass into their hands they would be the trustees of Waters & Laird, who might revoke the authority to pay the creditors, and recall the money. (7 *Taunt. Rep.* 339, *Stewart v. Fry*)."

I can see no reason why the Keystone Company, the lessor, and Curtis and Chester, the lessees, could not at any time after the execution of the lease, and before its assignment, have canceled the same if they had seen fit so to do. If that be so, then there was no trust established by or under the lease in favor of the complainant Trust Company, and no rights secured thereby which could be enforced in law or equity by said complainant.

It is hardly worth while to consider the contention that the Keystone Company, the lessor, was the agent of the mort-

3

gagee in the matter of the lease, and that the covenants therein contained were for the benefit of such principal. There is nothing contained in the bill which supports such contention, or which shows or tends to show the existence of such a relation.

I am clearly of the opinion that the complainants are not entitled to an accounting from the respondents for royalties under the provisions of the lease, nor for the payment of any sums which might be found to be due on such an accounting. The lease contains no covenant or promise on the part of the lessees to pay to the Trust Company, or to pay for its benefit, any royalties whatever; and there was certainly no privity of contract, or estate, between the Trust Company and the lessees in this regard, or any consideration moving from the former to the latter. For the same reason I hold that the complainants are not entitled to a decree that the lessees, or their assignee, pay the taxes on the mortgaged premises.

The ground upon which the complainants base their claim for the payment of royalties and taxes, is stated in paragraph twenty-four of the bill, as follows:

"The graphite on said premises is a material part of the complainants' security under said mortgage, and the graphite having been mined and taken away from said premises without the payment of the stipulated rent agreed to be paid to the said Union Trust Company, for the benefit of the bondholders as aforesaid, and without the accounting and the payment of the royalties provided for in the said lease, and by reason of the respondents permitting taxes to become in arrear and a lien to be filed therefor, the said mortgaged premises have been depleted and wasted to the irreparable injury to the complainants and the holders of the bonds secured by the said mortgage."

It is unnecessary to consider whether any waste, within the meaning of the law, was committed by the lessees in using or working the land under a mining lease, and for the purposes for which it was leased, because it is clear that the complainants are not entitled to recover from the lessees damages for any waste that may have been committed. There is no doubt that the mortgagee, for the protection of his security, was entitled, as against the mortgagor, or his grantee, to an injunction to restrain any waste which put in peril his security,

but he cannot recover from these lessees, or their assignee, damages for waste they may have committed.

The complainants in their supplemental brief, and in those recently submitted in reply, seem to have departed from the grounds first relied upon for a decree under their bill, and urge the following new claims based upon the covenants contained in the mortgage, viz.: (1) That such covenants run with the land, and are equally binding upon the mortgagor and assignees. (2) That if the covenants are not such as run with the land they nevertheless come within the equitable rule laid down in *Tulk v. Moxhay*, 2 *Ph.* 774, and are enforceable against those taking with notice.

I think it unnecessary to discuss the first proposition at much length, because it is clear that the stipulations or covenants of the mortgage, with which we are concerned, did not run with the land and bind the lessees of the mortgagor. Where covenants run with the land, the party charged is not liable unless he was party to the covenant or privy in estate with the maker of the covenant; and the privity of estate thus required is with the original covenantee, not with the original covenantor. 11 *Cyc.* 1080 (*note* 80); *Norcross v. James*, 140 *Mass.* 188, 2 *N. E.* 946.

There was no privity of estate between the complainants and Curtis and Chester, and the Chester Graphite Company, respondents, because the complainant Trust Company had no title to the land, and held no estate under it until it had taken title by sale and entry. In *Taylor on Landlord and Tenant*, vol. 1, §122, it is said:

"But the common law rules of mortgage have been modified in many states. * * * In Pennsylvania, Michigan and other states, a mortgage is only security for a debt, and no estate vests until after foreclosure and sale."

The mortgage in question is a Pennsylvania mortgage. The same writer, continuing, says:

"It is, however, well settled that no contract of lease or otherwise which the mortgagor may make with respect to the land either inures to the benefit of the mortgagee or is binding on him. There is in such a

case no privity of either estate or contract between the mortgagee and the lessee of the mortgagor to bind either, and the entry of the mortgagee into possession under the mortgage merely avoids the lease and releases the lessee from any obligation. *Western Union Tel. Co. v. Ann Arbor R. R. Co.*, 90 *Fed.* 379."

But even though the covenants in the mortgage are not binding on the lessees of the mortgagor as covenants running with the land, are they binding because they come within the equitable rule laid down in *Tulk v. Moxhay* ? In that case the owner of certain houses in the square sold the land adjoining, with a covenant from the purchaser not to use it for any other purposes than as a square garden. It was contended, not that the vendee could violate that contract, but that he might sell the piece of land, and that the purchaser from him could violate it without the court having any power to interfere, because it was a covenant that did not run with the land. The court held that the question did not depend upon whether the covenant runs with the land, but whether an equity was attached to the property by the owner.

" * * * For if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased." *Tulk v. Moxhay*, 2 *Ph.* 774, 778.

"Covenants restraining the use of real property afford an instance of that class of cases in which equity will charge the conscience of a grantee of land with an agreement relating to the land, although the agreement neither creates an easement nor runs with the land. The jurisdiction is not confined to cases in which an action at law can be maintained, and such covenants, although not binding at law, will be enforced in equity, provided the person into whose hands the land passed has taken it with notice of the covenant. * * * And the tendency of the later decisions, both in England and in the United States, is, it seems, to restrict rather than to extend this equitable doctrine." 11 *Cyc.* 1078, 1079.

It may also be said, as the result of an examination of the authorities, that the English and American courts have confined the application of this principle of equitable relief to covenants *restricting the mode of using the land.* *Haywood v. Building Society*, 8 *Q. B. Div.* 403; *London & So. Ry. Co. v. Gomm*, 20 *Ch. Div.* 562; *Trustees of Columbia College v. Lynch,*

70 *N. Y.* 440, 26 *Am. Rep.* 615; *Hodge v. Sloan,* 107 *N. Y.* 244, 17 *N. E.* 335, 1 *Am. St. Rep.* 816; *Norcross v. James,* 140 *Mass.* 188, 2 *N. E.* 946; *Atlantic City v. Atlantic City Steel Pier Co.,* 62 *N. J. Eq.* 139, 49 *Atl.* 822.

Manifestly the case before me is in no way analogous to the case of *Tulk v. Moxhay,* and cannot be governed by the doctrine declared therein. Even if such doctrine could be held to apply to covenants between mortgagor and mortgagee, the so called covenants in the mortgage, upon which the complainants rely, are not restrictive in their character but, in fact, the very reverse.

The case of *National Bank of Dover v. Segur,* 39 *N. J. Law* 173, which counsel for the complainants insist should rule the present case, seems to me to be not at all in point. The question in that case was, whether a covenant by Segur that he would not enter into banking business at Dover for a period of ten years in consideration of the sale by himself to Hoagland of a certain lot and banking house, ran with the land. The case arose between Hoagland's assignee and Segur, and concerned the covenant made by the latter to pay one thousand dollars if he should violate his covenant. It was held that he was liable to Hoagland's assignee on the covenant. The plaintiff was the grantee of the premises, and claimed the right to enforce, in its own name, the agreement, by virtue of the last clause in it, which was to the effect, that in case of a breach of the covenant sued on, the right of action should be in the owner in fee of the land. The court held, that although the deed was in form *inter partes,* it contained a covenant to a third party, and such third person might sue in his own name for a breach of such covenant, it appearing in the instrument to have been the intention to confer such right. It was also held, that if the plaintiff was not a party to the agreement, so as to give him an ability, as such, to sue upon it, he nevertheless could maintain the action, on the ground that the covenant was such as was capable of running with the land, and passed, with the title, to the plaintiff. The court, in deciding whether the covenant was capable of running with the land, made a distinction between those that imposed a burden and those that gave a

benefit, and held the covenant in question to belong to the latter class, being unable "to see why any contract, which is of a nature to attach to the land, and which has a beneficial tendency, should not be considered assignable, by act of law, as against the covenantor, with the title. * * * A covenant touches and concerns land when its performance confers a direct benefit on the owner of land by reason of his ownership, and tested by such a definition the covenant sued on has clearly such a capacity." The two grounds, or reasons, upon which the decision was based, were, first, the agreement that the covenant was to attach to and run with the land, which meant that in case of a breach the right of action should be in the owner of the fee. Second, the fact that the covenant was beneficial to the land and the owner. It is manifest that this case cannot be regarded as an authority for the complainants' contention, because the facts were essentially different, and the reasoning and decision of the court wholly inapplicable to the present case.

The complainants, in their bill, rely, apparently, not upon the covenants in the mortgage, but upon the covenants in the lease. It cannot be claimed that the covenants in the lease and mortgage are identical. There is no covenant in the mortgage for the payment of rent, but there is a covenant for the annual payment of interest, which amounted to three thousand dollars. The covenant in the lease is for the payment of an annual rental of three thousand five hundred dollars. The covenant in the lease respecting royalties is not the same as the stipulation in the mortgage. In the mortgage the provision was, that the mortgagor should pay to the mortgagee a sum equal to ten per centum of its net earnings, for the twelve months ending, etc. In the lease the lessees convenanted to pay to the lessor ten per cent. of the value of the graphite when manufactured and marketed, and also ten per cent. of the selling price of all graphite *mined* on the premises and manufactured there or elsewhere during the term of the lease.

For the reason stated in this opinion, I am constrained to hold that the complainants have not, in and by their bill of

complaint, made or stated such a case as entitles them, or any of them, in a court of equity, to the discovery, payment or relief prayed for, and the demurrers to the bill are, therefore, sustained.

Let an order be entered accordingly.

See *infra* page 155, for opinion denying an amendment to the bill.

On appeal, the decree was affirmed by the Supreme Court. (See *infra*, page 481.)