BRYANT, GRIFFITH & BRUNSON, INC., a New York corporation, *v.* GENERAL NEWSPAPERS, INC., a Delaware corporation.

*(March* 5, 1935.)

LAYTON, C. J., and HARRINGTON, J., sitting.

*C. Stewart Lynch* (of Biggs, Biggs & Lynch) for plaintiff.

*Charles Warner Smith* and *Thomas Muncey Keith* for defendant.

Superior Court for New Castle County, No. 157, September Term, 1934.

LAYTON, C. J., delivering the opinion of the Court:

The demurrer raises the question of the right of a third person, supposed to occupy the position of a creditor beneficiary, to sue upon a contract between the defendant and a debtor of such third party by virtue of which the defendant acquired all of the assets and property of the debtor, either without or with an express promise on the part of the defendant to pay the third party's debt.

The first count asserts the liability of the defendant to the plaintiff by reason of the acquisition of the assets and property of the debtor.

The second count is based upon an express agreement of assumption of indebtedness by the defendant, and this count and the demurrer thereto will be considered first.

Briefly the facts disclosed by the declaration are these: On April 1, 1930, Reporter Star Publishing Company, a Florida corporation owning and publishing a newspaper known as *Orlando Evening Reporter Star,* entered into a contract in writing with the plaintiff, an advertising agency, whereby the plaintiff was to act as its sole foreign advertising representative in the United States, outside of Florida, upon a commission of 15%, payable monthly on the net amount of advertising inserted in said newspaper, originating or placed from the designated territory, whether through the offices of the plaintiff or direct, the plaintiff guaranteeing the advertising accounts. The term of the contract was until a promissory note of the publishing company to the plaintiff for $13,600.00 was paid, and for two years from the date of the final payment thereon. Final payment was made on February 18, 1933.

On January 16, 1931, an agreement of sale and purchase was concluded between one Brossier, who owned or controlled all of the capital stock of the publishing company,

and the defendant, by the terms of which the defendant agreed to purchase all of the assets, tangible and intangible, of the publishing company, the consideration being cash, bonds of an existing corporation or of one to be formed, and "the balance of $93,000.00 by the assumption and agreement of General Newspaper, Inc., to pay $93,000.00 of indebtedness now due and owing by the Reporter-Star Publishing Company."

This agreement is attached to the declaration, and is made a part of the second count by reference.

Pursuant to this agreement the publishing company, on April 3, 1931, delivered a bill of sale to the defendant. This bill of sale is not attached to the declaration, but the count proceeds to aver as follows:

"That by the terms of the said bill of sale the said Reporter-Star Publishing Company * * * sold * * * and delivered to General Newspapers, Inc., all of its goods, property, chattels and effects, including 'all advertising contracts' including therein the aforesaid agreement then in force and effect between the said Reporter-Star Publishing Company and the plaintiff herein, the said Reporter-Star Publishing Company agreeing and convenanting with General Newspapers, Inc., that it was the lawful owner of said property, goods and chattels, that the same were free of all incumbrances except certain current accounts therein particularly set out, all of which the said General Newspapers, Inc., assumed and agreed to pay as part consideration for the sale to it of the said property, goods and chattels of Reporter-Star Publishing Company; that in said bill of sale there was set out therein among the debts which said General Newspapers, Inc., * * * assumed and agreed to pay, the obligation of the said plaintiff against the said Reporter-Star Publishing Company."

Then the count alleges that the property and assets thus acquired were merged with the property and assets of *Orlando-Morning Sentinel* which was published by a corporation owned or controlled by the defendant, and proceeds,

"that subsequent to the * * * delivery of the * * * bill of sale * * * and to the time when said defendant undertook to publish * * * said *Orlando Evening Reporter-Star*, said defendant

recognized and admitted its liability to the plaintiff growing out of the agreement between the plaintiff and the said Reporter-Star Publishing Company,"

notwithstanding which the defendant failed and refused to accept the services of the plaintiff under the contract and to pay the commissions as therein stipulated, .

"although the said defendant recognizing and admitting its liability to the plaintiff as aforesaid paid to the plaintiff the amount due and owing evidenced by the promissory note."

An analysis of this count shows first, an express assumption by the agreement of January 16, 1931, of $93,000.00 of indebtedness now due and owing; second, an assumption of current accounts particularly set out in the bill of sale, and the "obligation" of the plaintiff against the publishing company; third, a recognition and admission of liability growing out of the agreement of the plaintiff with the Publishing Company by the defendant to the plaintiff.

There is no averment of any account for monthly commissions due and unpaid when the defendant took over the publication of *Orlando Evening Reporter-Star*.

In the plaintiff's brief of argument it is asserted that . the theory of the second count is an express agreement of assumption by the defendant of the debts and obligations of the publishing company, and attention is directed to the averment that the defendant continued to make payments on the note of $13,600.00 as evidencing a recognition by the defendant of its liability under the advertising contract of the plaintiff. That is to say, because the defendant recognized its liability to pay the note which was set out as an item of indebtedness in the bill of sale, it thereby recognized its liability generally under the advertising contract, and an express assumption of definite, ascertained indebtedness of $93,000.00 became a general assumption of liability under the advertising contract.

This, we think, is mere argument, and amounts only to the pleader's conclusion.

■■ The averment that in the bill of sale there was set out among the debts assumed by the defendant "the obligation" of the plaintiff against the publishing company, refers to the note of $13,600.00. The construction of pleadings is most strongly against the pleader. If the plaintiff intended to rely upon an assuption by the defendant of general liability under the advertising contract, it should have made its averment with clearness and certainty. Indirect allegations and conclusions are not sufficient. There is nothing in the agreement of January 16, 1931, pointing to an assumption of general liability arising from the advertising contract. The language of the assumption is definite, "to pay $93,000.00 of indebtedness now due and owing," a part of which was the note of $13,600.00.

The averment that after the delivery of the bill of sale and to the time when the defendant took over the publication of *Orlando Evening Reporter-Star*, the defendant "recognized and admitted its liability to the plaintiff growing out of the agreement," that is, the advertising contract, points to some understanding or agreement between the plaintiff and the defendant, a foundation upon which admittedly, this action does not rest.

From our view point the plaintiff has based its cause of action upon the assumption of liability contained in the agreement of January 16, 1931. The averments with respect to the bill of sale do not suggest a widening of the scope of the assumption; and this view is supported by the statement in the plaintiff's brief, that the "second count raises squarely the right of a person not a party to a contract (which contract is expressly or by its terms applicable to and for the benefit of such person) to sue to enforce the provisions therein for the benefit of the suing person."

The rule of the common law was that a stranger to the consideration could not recover on a promise made for his benefit, and this rule in England is established without exception. 2 *Street, Foundations Legal Liability,* 154; 1 *Williston, Contr.,* 685.

In this state the Supreme Court has not spoken, but every pronouncement of our courts, both in equity and at law, has been in accord with, or suggestive of agreement with, the common law rule, and Delaware has been rightly classified by such a careful writer as Professor Williston, 1 *Williston, Contr.,* 716, and by *Corpus Juris, Vol.* 13, 703, *note.*

It is true that this latter work, *Vol.* 13, 705, *note* 4, upon the supposed authority of *Farmers' Bank v. Brown,* 1 *Harr.* 330, placed Delaware as among those jurisdictions which allow a third party to sue upon a contract made for his benefit. This rule is neither announced nor supported by this authority. All that was said was that, if B places money in A's hands to pay his debt to C, A is liable to C, and A cannot be attached as the garnishee of B, a result reached upon the plain principles of quasi contract.

*Waters, et al., v. Comly,* 3 *Harr.* 117; *Townsend v. Townsend,* 5 *Harr.* 127; *Merchants' Union Trust Co. v. New Philadelphia Graphite Co.,* 10 *Del. Ch.* 18, 83 *A.* 520; *Jones v. Buck,* 4 *Boyce* (27 *Del.*) 546, 547, 90 *A.* 86, all being concerned with sealed instruments, it is true, indicate, definitely, adherence to the common law rule; nor does *Board of Public Education v. Ætna Casualty & Surety Co.,* 4 *W. W. Harr.* (34 *Del.*) 355, 152 *A.* 600, mark a departure from the trend of opinion. There the bond sued upon expressly conferred upon a third person, a materialman, the legal right to enforce his interest by action at law, a fact distinguishing *Jones v. Buck* holding that in a sealed instrument the parties named in the premises are the only parties having a suable interest, no matter for whose bene-

fit the instrument was made, unless other parties were expressly given that right in the remainder of the instrument. *Brooks Transportation Co. v. Merchants' Mutual Casualty Co.,* 6 *W. W. Harr.* (36 *Del.*) 40, 171 *A.* 207, is in the class of cases where the contract provides expressly that in certain contingencies a third party would have the right to sue to enforce its provisions.

In *First National Bank &. Trust Co. v. Mutual Fire Ins. Co., etc.,* 5 *W. W. Harr.* (35 *Del.*) 265, 162 *A.* 703, the right of a mortgagee named in a standard mortgage clause of a fire insurance policy issued to the mortgagor to sue thereon in his own name was upheld, as a right growing out of the independent contract made between the company and the mortgagee. See, also, *Kimberley & Carpenter, Inc., v. National Liberty Ins. Co.,* 5 *W. W. Harr.* (35 *Del.*) 63, 157 *A.* 730.

Insurance decisions form generally a class by themselves, and but little reference is made in them to the general law of contracts. 1 *Williston, Contr.,* § 369.

The case of *Garford Motor Truck Co. v. Buckson, et al.,* 4 *W. W. Harr.* (34 *Del.*) 103, 143 *A.* 410, is of the class of *Farmers' Bank v. Brown, supra,* or more properly, perhaps, it presents a case of novation.

From an examination of these cases it may not be said, as suggested by the plaintiff, that the courts in Delaware now look to the contract to ascertain therefrom if any benefit was intended for a person not a party thereto.

 ■ Stated generally, and disregarding various limitations and qualifications imposed in different jurisdictions, the prevailing rule in this country is that a third person may sue to enforce a promise made for his benefit, even though he is a stranger both to the contract and to the consideration. 6 *R. C. L.* 884; 13 *C. J.* 705; 1 *Williston, Contr.,* § 381; 2 *Elliott, Contr.,* § 1411, *et seq.*

Despite the arguments advanced and the difficulties suggested by the courts holding to the English rule, legal evolution is against them. A promise to discharge the promisee's duty should create a duty of the promisor to the creditor beneficiary to perform the promise. *Restatement of the Law of Contracts,* § 136.

The rule that consideration must move from the plaintiff or from the promisee, so far as it exists, is purely technical, and in a developed system of contract law there seems no good reason why A should not be able for a consideration received from B to make an effective promise to C. 1 *Williston, supra,* § 354; 2 *Street, supra,* 160, 161.

But the second count of the declaration discloses no cause of action under the rule thus far prevailing in this state, nor, do we think, under a more liberal rule. Necessarily the rights of a party for whose benefit a promise is made must be measured by the terms of the agreement between the principal parties. 6 *R. C. L.* 886. Under the common law rule the contractual duty was broader than the remedy. Under the liberal rule the remedy is made as broad as the contractual obligation. 2 *Elliott, supra,* § 1411; 2 *Street, supra,* 160. Certainly, the right of action of the third party cannot be in excess of the contractual duty of the principal parties.

What is sought to be enforced here against the defendant is a right of action for damages resulting from a breach of contract accruing after the date of the contractual obligation, which obligation is definitely limited in amount and in time. Whatever meaning may be given to the word "indebtedness," it may not be said that indebtedness, fixed in amount and of a time certain, may be construed to include unascertained damage to accrue in the future.

Little need be said with respect to the first count. The theory of this count, as stated in the plaintiff's brief,

is that by reason of the acquisition of its property and assets by the defendant, the defendant became liable for the debts and obligations of Reporter-Star Publishing Company. The plaintiff admits that it relies principally on the second count, but it contends that the first count is supported by the rule of *Drug, Inc., v. Hunt,* 5 *W. W. Harr.* (35 *Del.*) 339, 168 *A.* 87. This case does not, at all, support the theory of the first count. There one corporation transferred all of its assets to another corporation. Payment was made in stock, issued by the transferee directly to the shareholders of the transferring corporation, in exchange for their stock in that corporation, the transferee agreeing to assume all of the debts and liabilities of the transferror. It was held, with respect to the creditors of the transferring corporation that the facts and circumstances disclosed a *de facto* merger, even though the statute concerning corporate mergers had not been fully complied with, and that a third person, having a right of action against the transferring corporation, could maintain it against the transferee.

There is no merger, or suggestion of merger here. Amalgamation of assets, without more, is not a merger. If A sells his farm, implements and stocks, all he has, to B in the absence of fraud or other equitable consideration, B is not liable for the debts of A. A corporation buying the property and assets of another corporation is in the same situation.

Neither count discloses a cause of action, and the demurrer to the declaration is accordingly sustained.