### KUSIN v. MILLER.
### No. 6277.

Court of Appeal of Louisiana. Second Circuit.

Nov. 29, 1940.

458

Geo. Wesley Smith, of Monroe, for appellant.

George W. Lester, of Monroe, for appellee.

HAMITER, Judge.

Joseph Kusin, the sole owner and proprietor of the Dixie Bedding & Furniture Company of Monroe, Louisiana, brings this suit seeking judgment against defendant, C. C. Miller, in the sum of $168.80, being the balance allegedly due for various articles of household furniture sold between July 25, 1936, and September 25, 1936, both dates inclusive.

Defendant, in his answer, admits the purchasing of merchandise from plaintiff on the dates alleged. As a special defense, he avers:

"* * * that in July 1936 he approached Cochran and Franklin Co. Inc., of Holly Ridge through Mr. Geo. B. Franklin, its president, relative to buying a bill of furniture from that company, it being engaged in the mercantile business. This defendant had been doing considerable business with the said company in its stave and heading department. Mr. Franklin stated that they did not carry a line of furniture such as this defendant wanted but that he would make arrangements with the Dixie Bedding and Furniture Company of Monroe, Louisiana, for this defendant to buy his bill of furniture there and that Cochran and Franklin Co., Inc., being merchants would get a dealers' discount off from the regular retail prices charged by the said Dixie Bedding and Furniture Company and would give to this defendant the benefit of such discount. Mr. Franklin then called the said Dixie Bedding and Furniture Company over the long distance telephone and defendant heard Mr. Franklin's end of the conversation and understood that the said Dixie Bedding and Furniture Company agreed to allow a dealer's discount of 40% to 45% off of its regular retail prices to Cochran and Franklin Company, Inc., on any bill of furniture defendant bought and Mr. Franklin agreed that defendant should have the benefit of such discount.

"Thereafter defendant did buy a bill of furniture from this plaintiff and did make payments on same from time (to time) and continued making them until such a time as the total payments made by him plus 40% discount on the retail price of the merchandise sold to him would equal the total retail price of such merchandise when he quit."

On a trial of the merits, judgment was rendered in plaintiff's favor in accordance with his prayer; and from it defendant appealed.

It is undisputed that defendant, between the above mentioned dates, acquired from plaintiff numerous articles of furniture having a retail value of $415.25; and that subsequently, at various times up to April 2, 1937, he made payments on the account totaling $246.45. The difference between these amounts represents the claim on which this suit is founded.

The issue presented by the controversy is whether or not defendant is entitled to a 40% or 45% discount from such retail value, as contended by him in the answer.

George B. Franklin is president of Cochran and Franklin Company, Inc., which engages in a lumber, farming and mercantile business at Holly Ridge, Louisiana. It is his testimony that defendant Miller, who was establishing a home in Monroe and was his special friend, conferred with him at his office about buying some furniture. His firm had been transacting business on a wholesale basis, during a period of more than five years, with the company owned by plaintiff; and he was personally acquainted with such owner. Discounts of as much as 50% on retail prices had previously been allowed. He further stated that on the date of that conference, or July 25, 1936, he placed a telephone call for the plaintiff, Joseph Kusin; and he is positive that this was the person with whom he was connected and talked.

Regarding this telephone conversation, Franklin testified: "* * * I called up Mr. Kusin and asked him what the wholesale discount would be if I sent a customer over there, and Mr. Miller didn't know what he was going to buy, and Mr. Kusin said anywhere from 40 to 45%. I told him I would send Mr. Miller over here. A letter was not necessary for he was to come on over. We did not receive a bill for this furniture, it was charged by the Dixie Company on their credit account, and when

we did not receive the credit I began writing to the Dixie Bedding & Furniture Company. We were not making any profit off Mr. Miller and I was going to give him whatever discount we got from the Dixie Bedding & Furniture Company, and he was present when I was talking over the telephone and he said 40 to 45% and I told Mr. Miller that at the time." ·

Miller, the defendant herein, went to plaintiff's establishment on that date and purchased furniture having a retail value of $319.35. At this time he paid plaintiff $70 in cash, and executed a promissory note, together with a chattel mortgage as security, for a sum equaling the unpaid balance or difference. This note was payable at the rate of $18 per month. Subsequently, at different times up to and including September 25, 1936, defendant purchased other articles of merchandise, which were charged to his account, bringing his total purchases from plaintiff, figured on a retail basis, to $415.25. On none of the mentioned occasions did defendant or the seller refer to any purchasing arrangement confected by Franklin. The various payments made by the purchaser on ·the account totaled a sum in excess of the amount of the note given; and that instrument, therefore, is now important only in so far as the issue herein presented is concerned.

Plaintiff Kusin not only denies having personally entered into an agreement with George B. Franklin for the sale of furniture to defendant at a discount, or having had knowledge of any arrangement of that ·nature being made, but also denies having engaged in the mentioned telephone conversation with Franklin.

 If there was an agreement for the discount entered into between plaintiff, or his authorized representative, and Franklin for defendant's benefit, and our close study of the record leaves us with the conviction that one did exist, it was valid and binding on plaintiff. Civil Code, Article 1890, provides: "A person .may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."

The emphatic testimony of the witness Franklin, disclosing the agreement's existence, is corroborated by that of defendant, and also by various, circumstances hereinafter pointed out.

To be noticed is the fact that Franklin is not a party litigant in this cause and has nothing to lose or gain by the final decision thereof. It is certain, therefore, that his positive testimony would not have been given if he had not been thoroughly satisfied that he effected the stated arrangements.

Then, too, Franklin addressed a letter to plaintiff's firm on September 14, 1936, less than two months after defendant's first purchase, stating:

"Several months ago we sent you a customer, Mr. C. C. Miller, who bought quite a bill of furniture from you.

"It was our understanding that you were to sell and bill him and give us the proper credit. We have not had copies of these invoices and we will appreciate you giving us copies of same, crediting us with our usual commission."

Why was this letter written if some previous understanding had not been reached?

A reply to it was dispatched by plaintiff's son, Louis Kusin, under date of September 18, 1936, in which the writer, on behalf of the firm, said:

"We received your letter of Sept. 14th, and we gave it our careful attention. This bill was sold to Mr. Miller on a 20 month contract. *He requested that we handle his account as it was more convenient to him, considering the fact that he resides in Monroe.* We are not making a great deal out of this bill, *but we believe that you are entitled to 5%* so we are crediting your account with this amount.

"Hoping this is entirely satisfactory and thanking you for past favors, we beg to remain."

This last quoted communication prompts the queries: Who else might have handled the account? Was it the addressee? Why was Cochran & Franklin Company, Inc., entitled to any discount?

On September 21, 1936, Franklin wrote:

"Replying to your letter of the 18th, which was in reply to ours of the 14th, the writer talked to one of the Mr. Kusin's over the telephone before we sent Mr. Miller over there to buy furniture and it was our understanding that we would receive 40 to 45% commission, depending on what Mr. Miller bought. We under-·

stand that Mr. Miller purchased around $300.00 and we were to guarantee the account.

"Please advise if this is not in line as we feel that we are entitled to more than the 5% that you have credited our account. We also understood that you would not credit our account until Mr. Miller has paid down to the amount we should be credited with."

He again wrote on October 5, 1936, requesting a reply to his said letter of September 21, 1936.

The requested letter was written by plaintiff under date of October 7, 1936, in which the following was said:

"The writer has just returned home and found your letters in reference to Mr. C. C. Miller's bill of furniture bought from us, for which we have already given you a credit of 5%. We like to treat you right and give you every thing we can.

"Now we make you this proposition: If you want to charge this bill to your account, we will give you the wholesale prices. If you want us to handle this account, we will give you an additional 5%. We are sure you will be satisfied with this, as you do not have to put up any money and you will get 10% credit now. Let us hear from you in reference to this.

"We appreciate your business and we are glad to give you every thing possible. You know we have to wait 15 months for this account to be paid, and Mr. Miller said it would be more convenient for him to come here and pay. Let us know, and we will charge accordingly."

Correspondence between the parties, respecting the account, continued through June 15, 1937. At all times Franklin insisted on receiving the 40% to 45% discount. At no time did plaintiff deny having entered into an agreement with Franklin; his sole position was that the allowance of the requested discount was not justified by the price at which the merchandise was sold and a loss would be sustained.

Franklin's testimony does not clearly show the method that the parties agreed on for allowing the discount; that is, whether the articles would be charged to Miller at retail price, with credit being duly given thereafter, or billed to Cochran & Franklin Company, Inc., at the wholesale price. This, however, involves only a matter of bookkeeping, and, as we view it, is unimportant.

The fact that Miller executed the promissory note, together with the chattel mortgage, when making the first purchase, is likewise of no importance. As explained by him, "it could have been taken up by Mr. Franklin when, he paid it out."

There was no reason for Miller to discuss with plaintiff, or with the latter's employees, the matter of the allowance of the discount. This, he understood, had been previously cared for by Franklin.

With reference to Miller's making payments to plaintiff from time to time, the record shows that he paid, under instructions from Franklin, until most of the account for which he was obligated, or up to the discountable portion of 40%, had been liquidated. There still remained due and owing under said 60% part, however, the sum of $2.70.

Although we are reluctant to disturb the decision of a trial judge where only questions of fact are involved, it is our duty to do so when manifest error, as in this case, appears to attend it.

Therefore, the judgment appealed from is amended to the extent of reducing the amount of plaintiff's award from $168.80 to $2.70; and, as amended, it is affirmed.

The costs of the trial court shall be paid by defendant, as decreed in the judgment, while plaintiff shall stand the costs here.