WILMINGTON HOUSING AUTHORITY, a Body Corporate and Politic created under the Housing Authority Law of the State of Delaware, for the use of Joseph R. Simeone, Plaintiff Below, Plaintiff in Error, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Corporation of the State of Maryland, Defendant Below, Defendant in Error.

TERRY, J., dissenting.

(*April* 29, 1946.)

HARRINGTON, Ch. RICHARDS, C. J., SPEAKMAN, TERRY and CAREY, J. J., sitting.

*Killoran and Van Brunt* for plaintiff in error.

*Morris Cohen* for defendant in error.

Supreme Court, No. 2, May Term, 1945.

CAREY, J., delivering the opinion of the Court:

We are in accord with the conclusions of the Court below concerning the first two grounds of demurrer for the reasons given by that Court. It is unnecessary to repeat those reasons in full. As to the first ground, while the allegations could perhaps have been drawn with greater precision, the narr is sufficient. As to the second ground, a comparison of the language of the bond and that of the statute readily demonstrates that the bond is broader than the statute and includes claims for labor and materials supplied to a sub-contractor. If the defendant had intended to limit its liability to the statutory requirement, it should have used proper language to do so. If any construction of this language were necessary, there would be no legal reason for construing it strictly in favor of this paid surety. See *Royal Indemnity Co. v. Northern Granite & Stone Co.*, 100 *Ohio St.* 373, 126 *N. E.* 305, 12 *A. L. R.* 382.

The third ground of demurrer involves the much-discussed third party beneficiary rule. The plaintiff contends that the Delaware Courts have never fully adopted the English rule which forbids recovery by persons other than parties to a contract; that, at most, the rulings in this State are not uniform; and that reason and justice demand the repudiation of the English doctrine even at the expense of overruling our former decisions, if that be necessary. It is suggested that some of the Delaware cases which might seem to support the English doctrine are concerned merely with the matter of procedural rather than substantive law.

The defendant concedes that the Delaware cases do not follow the English rule as to simple contracts but it argues strongly that we are committed to that rule in cases of sealed instruments, inasmuch as in this State the seal retains its common-law sanctity. It further suggests that these parties undoubtedly contracted with reference to the existing Delaware law as disclosed by the reported cases and that this Court should not depart from its previous rule, since that would amount to the imposition of an unexpected burden upon the defendant. It argues that the change is a matter for legislative consideration.

We do not deem it necessary to determine whether the so-called English rule is concerned solely with procedural rather than substantive questions. There is indeed some respectable authority supporting this contention of the plaintiff. *Powers v. New England Fire Ins. Co.*, 69 *Vt.* 494, 38 *A.* 148; *Maryland Casualty Co. v. Portland Const. Co.*, (2 *Cir.*) 71 *F.* 2d 658; *Board of Education v. Aetna Indemnity Co.*, 159 *Ill. App.* 319; *Blue Star Navigation Co. v. Emmons Coal M. Co.*, 276 *Pa.* 352, 120 *A.* 459. On the contrary, the leading English case of *Tweedle v. Atkinson*, 1 *B. & S.* 393, 121 *Eng. Reprint* 762, treats the subject as a rule of substan-

tive law. See 2 *Williston on Contracts, Revised Edition,* Sec. 366 and Sec. 401.

If the rule goes no further than to require a party to a sealed instrument to be the nominal plaintiff, that procedural requirement is met by the manner in which this suit has been brought, to-wit, "Wilmington Housing Authority for the use of Joseph R. Simeone." Viewed from this angle, Wilmington Housing Authority is the plaintiff and the fact that it is suing for the use of some one else, who will actually get the proceeds of any ultimate recovery, would be of no moment.

It appears, however, that this Court, in *Merchants' Union Trust Co. v. New Philadelphia Graphite Co.,* 10 *Del. Ch.* 481, 92 *A.* 1084, treated the rule as a substantive one and it is therefore necessary that we review it as such. The case was an appeal from the Court of Chancery which is not concerned with matters of common-law procedure.

During the Seventeenth Century, the English Courts apparently allowed a third party beneficiary to recover. *Dutton v. Poole,* 2 *Lev.* 210, 1 *Ventr.* 318. In spite of that fact, the case of *Tweedle v. Atkinson, supra,* definitely held that such a beneficiary could not recover on the ground that no action can be maintained by the person from whom no consideration moves. The English Courts have consistently refused to overthrow this ruling, although in many instances they have permitted the action by basing it upon the theory of a trust. See *Anson on Contracts* (American Edition), Ch. V111 and 81 A. L. R. 1271.

The great majority of American Courts permits a recovery by the third party beneficiary, whether he be a donee beneficiary or creditor beneficiary. 2 *Williston on Contracts,* (Revised Edition) Ch. XIV.; 81 *A. L. R.* 1271. In some states, the present rule permitting recovery is the re-

sult of statute, *Kusin v. Miller, La. App.,* 199 *So.* 457; *Guardian Depositors Corp. v. Brown,* 290 *Mich.* 433, 287 *N. W.* 798; in others, the Courts have always permitted it both as to simple and sealed instruments. *Williams v. Markland,* 15 *Ind. App.* 669, 44 *N. E.* 562; *French v. Farmer,* 178 *Cal.* 218, 172 *P.* 1102. In still others, such as New Jersey, the right as applied to sealed instruments is a result of statute, although the Courts had originally recognized it on unsealed instruments. *People's Bank & Trust Co. v. Weidinger,* 73 *N. J. L.* 433, 64 *A.* 179. In some states where the rule originally was similar to the English rule, the American principle has recently been adopted through judicial action by an outright reversal of former decisions. An outstanding example is the State of Pennsylvania. In *Commonwealth v. Great American Indemnity Co.,* 312 *Pa.* 183, 167 *A.* 793, the Supreme Court of that State overruled the former decision of *Greene County. v. Southern Surety Co.,* 292 *Pa.* 304, 141 *A.* 27, although the principle of the latter case had been followed for many years. *Pennsylvania Supply Co. v. National Casualty Co.,* 152 *Pa. Super.* 217, 31 *A.* 2d 453. In deciding the Great American case, the Court pointed out that forty-four out of forty-eight states of the Union were opposed to the English doctrine, the four exceptions being Pennsylvania, Massachusetts, Connecticut and Michigan. Apparently the Court considered that Delaware permitted recovery in such cases. In any event, in that case, the Supreme Court deliberately and definitely accepted the reasoning of Prof. Corbin, in 38 Yale Law Journal 1, by adopting the principles set forth in the Restatement of the Law of Contracts, Sec. 133, etc. Likewise by judicial action, Connecticut now follows the rule of the Restatement. *Byram Lumber & Supply Co. v. Page,* 109 *Conn.* 256, 146 *A.* 293. Michigan has adopted the modern American rule by statute. Loc. cit., *supra.* Aside from Delaware, therefore, it appears that Massachusetts is probably the only State which

observes the English rule. Even there, the Court recognizes a number of exceptions. *Johnson-Foster* Co. *v D'Amore Construction Co.,* 314 *Mass.* 416, 50 *N. E.* 2d 89, 148 *A. L. R.* 353; also see 81 *A. L. R.* 1273. Those exceptions have been characterized as showing "the length to which the Court is sometimes compelled to go in order to avoid the more glaring failures of justice resulting from the general rule which it had adopted."

Probably no rule of contract law has produced more litigation than the question with which we are now dealing. Probably no principle of the English common law has been the subject of more criticism in this country by both Judges and textwriters. That doctrine was usually based upon the arguments of consideration and privity. "The rule that consideration must move from the plaintiff or from the promisee, so far as it exists, is purely technical, and in a developed system of contract law there seems no good reason why A should not be able for a consideration received from B to make an effective promise to C." *Bryant, Griffith & Brunson v. General Newspapers, Inc.,* 6 *W. W. Harr.* (36 *Del.*) 468, 178 *A.* 645, 647. Consideration as a basis is effectively disposed of in *La Mourea v. Rhude,* 209 *Minn.* 53, 295 *N. W.* 304, 306, in the following words: "Consideration for a promise is demanded by the law solely as a test of actionability. It is determinative of the presence of enforceable obligation but ordinarily not of its quantity or the identity of obligee. For the latter two, we usually look not to source of consideration but exclusively to the terms of the contract. * * * So it is no objection to an action on the contract by a donee or creditor beneficiary that he did not furnish any of the consideration."

Lack of privity as a basis for the rule is also discussed in the La Mourea case and held not to be a justifiable ground. Some Courts have evaded the necessity of privity

by implying a trust or agency; others have indicated that a moral obligation of the promisee to the third party is sufficient to create a privity; still others have said that the law operating on the act of the parties creates the duty, establishes the privity, and implies the promise and obligation, on which the action is founded. 12 *Am. Jur.* 830. In recent years, however, it has been said that the doctrine permitting a recovery by the beneficiary has prevailed in the United States on the strength of its reasonableness and necessity, rather than upon any preconceived theory of law. The reason for the doctrine is that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay. It has also been said that the doctrine has become a rule of law in its own right and needs no fictitious basis for its existence. The authors of the Restatement of the Law of Contracts seem to have viewed the situation in this light. Rest. Paragraph 133, etc. See 38 Yale Law Journal 1.

The defendant admits the right of the third party beneficiary to sue on simple contracts. *Moscon v. North American Benefit Association,* 9 *W. W. Harr.* 495, 2 *A.* 2d 898. It insists, however, that the rule is otherwise with respect to sealed instruments in Delaware. *Jones v. Buck,* 4 *Boyce* 546, 90 *A.* 86; *Merchants' Union Trust Company v. New Philadelphia Granite Co., supra.* Those cases have been discussed by the Court below. The principles therein laid down are summarized in *Board of Public Education v. Aetna Casualty & Surety Co.,* 4 *W. W. Harr.* 355, 152 *A.* 600, 603, in these words: "In a sealed instrument the parties named in the premises are the only parties having a suable interest, no matter for whose benefit the instrument is made, unless other parties are expressly given that right in the remainder of the instrument."

Just why there should be a distinction in this respect between sealed instruments and simple contracts is difficult to understand. See 6 *R. C. L.* 885. The lower Court seems to recognize the lack of a satisfactory reason therefor. We can hardly close our eyes to the fact that the average person in accepting an insurance policy pays no attention to the existence or absence of a seal and it would indeed be a hard rule which forbids the beneficiary under such a contract from recovering merely because the Company had the foresight to affix a seal. It is no answer to say that insurance contracts are governed by special rules; that is mere subterfuge. From the standpoint of justice and practical common sense, a person should not be deprived of his substantive rights upon such a technical ground, especially when the procedural objection has been overcome as mentioned earlier in this opinion, namely, by bringing the action in the name of the promisee to the use of the beneficiary.

We find no convincing authority to indicate that the English Courts have recognized the exception mentioned in the case of *Jones v. Buck* and enforced in *Board of Public Education v. Aetna Casualty & Surety Co., supra.* Upon analysis, the exception is rather unique. The effect of it is to say that a third party beneficiary cannot sue, unless the contracting parties confer upon him the right to sue. The right to sue usually is a legal result of a relationship determinable by the Court. It arises by reason of a breach of duty and ordinarily not because the parties expressly say so. It seems somewhat anomalous to hold that a person's right to sue in any type of action depends upon an express statement in the contract that he shall have such right of action. We think that this so-called exception is merely another example of the many devices which Courts have used to mitigate the harshness and injustice of that rule. We ought to recognize these numerous exceptions for what they

really are—"plain, bare-faced fiction" by which Courts have recognized the need in modern-day life for the adoption of the American Rule. If the presence of the seal is to have the effect of denying a right of action to a third party, the statement of the contracting parties that he shall have such right should not change that rule. If we permit the action in one case, we must permit it in the other.

The truth of the matter is that the exceptions grafted upon the English doctrine by our Delaware Courts have breached the imaginary barrier erected by the seal against the overwhelming force of justice and reason supporting the American doctrine, thereby opening the way for us to wipe out the last vestiges of an "outworn, archaic" rule which is in conflict with the demands of modern-day business and social policy.

The defendant suggests that the parties executed this bond while having in mind the rule expounded in *Merchants' Union Trust Co. v. New Philadelphia Graphite Co., supra,* and *Jones v. Buck, supra,* and that the effect of granting the right of action in this case is to overrule the former law of this State and thereby to write a new contract for the parties. It, therefore, contends that we would thus be overthrowing pre-existing rights and unsettling intended obligations. Presumably this argument is based upon the assumption that the defendant has a constitutional vested interest in former decisions of our Courts, or that the reversal of a former Court decision constitutes an impairment of the obligation of a contract. It is to be noted that we are not here concerned with the operation of any statute. This argument is therefore adequately answered by reference to the case of *Tidal Oil Co. v. Flanagan,* 263 *U. S.* 444, 44 *S. Ct.* 197, 68 *L. Ed.* 382, wherein the United States Supreme Court flatly and definitely held that the mere reversal by a State Court of its previous decision to the prejudice of one

party does not take away his property without due process of law and is not in conflict with the constitutional provisions protecting the obligations of contracts. Indeed, under the broad wording of this bond binding the surety to pay for all labor and material used on the job, it may even be doubted if the defendant was in fact relying upon any former decisions of the Delaware Courts. If it did so rely upon them, it was not justified in doing so when it could easily have limited its liability by the addition of a few words in its contract. If the surety had in mind the former decisions in this State, it must also have had in mind the history and progress of the rule in other states and must have known that this last-mentioned contention has not prevented highest Courts of other states from following a similar course.

In order, however, that we may see more clearly just how much weight should be given to this last stated contention, let us mention certain Delaware cases which the defendant must "have had in mind" when executing this contract. If the defendant had then made a detailed study of the cases, it would have discovered several interesting points. First, it would have learned from *Merchants' Union Trust Co. v. New Philadelphia Graphite Co., supra,* that this Court there based its decision solely upon lack of privity; that in none of the three reported opinions in that case is there any suggestion of a distinction between sealed and unsealed instruments; that in the lower court's opinion, which was approved by this Court, implied approval was given to the doctrine announced in *Lawrence v. Fox,* 20 *N. Y.* 268, which latter case conceded the right of a creditor beneficiary to sue. In this last respect, therefore, this case departed from the English rule.

Secondly, in *Jones v. Buck, supra,* the defendant would have found the Superior Court suggesting a method of

breaking away from the English Rule by indicating that the third party beneficiary can sue where he is expressly given that right by the terms of the instrument.

Thirdly, the defendant would have discovered the outright application and even extension of the principle of *Jones v. Buck* in the case of *Board of Public Education v. Aetna Casualty & Surety Co., supra,* wherein the Superior Court stretched the rule of *Jones v. Buck* to include the right of any one of a given class of persons to bring suit on a sealed instrument, that class of persons having been designated as beneficiaries in the contract.

Fourthly, in *First National Bank & Trust Co. v. Mutual Fire Insurance Co.,* 5 *W. W. Harr.* 265, 162 *A.* 703, and *Brooks Transportation Co. v. Merchants' Mutual Casualty Co.,* 6 *W. W. Harr.* 40, 171 *A.* 207, the defendant would have found the American rule applied in the case of unsealed insurance policies, which was by no means the common-law rule in England.

In the light of those decisions, can it be said that the defendant had a right to rely upon the theory of the law set forth in its attorney's brief? Can this Court be now said to alter the obligation of a contract when the foregoing holdings show the very unsettled state of the Delaware law, especially when it is remembered that the only decision by the Supreme Court contains no hint whatever that its ruling was based upon the ground now asserted by the defendant to be the law?

The defendant's contention does serve to remind us of the seriousness of reversing a former ruling of the Supreme Court. In reviewing this case, we have constantly had in mind the thought that we should do so only under the most compelling circumstances. However, the arguments and reasons for adopting the American rule on this subject

are so forceful and righteous as to justify the conclusion that the reasoning which denies the right of action in this type of case is erroneous. We are of the opinion that the acceptance and adoption of the principles laid down by the eminent authors of the Restatement of the Law of Contract is the only satisfactory method of resolving the conflict. Briefly, the principles laid down in the Restatement of the Law of Contract are that the promisor owes a duty both to a donee beneficiary and a creditor beneficiary, as well as a duty to the promisee, to perform the promise. By accepting these principles, we are merely recognizing and enforcing rules which have received almost universal sanction elsewhere in this Country; at the same time, we are simply requiring the defendant to abide by the terms of its contract, for which it received consideration. Real justice permits no other course. Wilmington Housing Authority, being beyond reach of judicial·process, has sustained and can sustain no actual loss by defendant's refusal to pay this use-plaintiff and would therefore be entitled only to nominal damages if suit were brought solely in its name. Accordingly, under the minority rule, there would be no way to compel a defendant to abide by its contract. Under the majority rule now adopted by us, "the remedy is made as broad as the contractual obligation." See *Bryant, Griffith & Brunson v. General Newspapers, Inc., supra.*

The decision of the Court below is affirmed as to the first two grounds of demurrer but reversed as to the third ground. The case will be remanded to the Court below for further proceedings in accordance with this opinion.

TERRY, J., dissenting.

The great weight of authority under the English cases as of the date of the adoption of our first Constitution in 1792 unquestionably denied to a third party beneficiary a

right to maintain an action at law on an instrument under seal impliedly made for his benefit, but to which he was not a party. *Williston on Contracts, Rev. Ed.,* vol. 2, p. 1053; *Halsbury's Laws of England,* 2d Ed., vol. 7, p. 79; *Green v. Horne,* 91 *Eng. Reprint* 177; *Berkley v. Hardy,* 108 *Eng. Reprint* 132; *Bradford v. Stuckey,* 129 *Eng. Reprint* 995; *Southampton v. Brown,* 108 *Eng. Reprint* 615; *Mellen v. Whipple,* 1 *Gray* 317, 67 *Mass.* 317; *Crowe v. Rogers,* 93 *Eng. Reprint* 719; In re *Empress Engineering Co.,* 1 *English Ruling Cases* 686. The majority cite the case of *Dutton v. Poole,* 2 *Lev.* 210, and say, "During the Seventeenth Century, the Eng'ish Courts apparently allowed a third party beneficiary to recover." A reading of the Dutton case discloses that the action was in assumpsit. The case is viewed as exceptional, and, as stated by Williston, vol. 2, *Rev. Ed.,* p. 1053, professes not to deny that only a party to a contract can sue upon it. The action was by a child on a promise made to her father. The Court held that the child might be so far identified with the parent on account of the nearness of relationship as to be regarded as a party to the contract. See also *Tweedle v. Atkinson,* 121 *Eng. Reprint* 262, decided in 1861, wherein the Court held in an action in assumpsit upon a marriage contract that a third party beneficiary could not recover, as no action could be maintained by the person from whom no consideration moves.

The English Rule has been fo'lowed in this State for upwards of one hundred years. In the case of *Townsend v. Townsend,* 5 *Harr.* 127, decided between 1848 and 1855, the rule was clearly stated and followed. The Court said that the right follows the interest, and the party who has the legal interest in a covenant must sue though the beneficial interest is in another; and, if a deed be inter partes as between (a) of the first part and (b) of the second part, (c) if not expressly named as a party, cannot sue thereon

though the contract purport to have been made for his sole advantage and contain an express covenant with him to perform an act for his benefit. *Merchants' Union Trust Co. v New Philadelphia Graphite Co.*, 10 *Del. Ch.* 18, 83 *A.* 520, affirmed 10 *Del. Ch.* 481, 92 *A.* 1084; *Jones v. Buck*, 4 *Boyce* 546, 90 *A.* 86; *Board of Public Education v. Aetna Casualty & Surety Co.*, 4 *W. W. Harr.* 355, 152 *A.* 600; 1 *Williston on Contracts*, 716, *Rev. Ed.*, 1104; 13 *C. J.* 703; 17 *C. J. S.*, Contracts, § 519.

It is also stated in the majority opinion that in the case of *Jones v. Buck, supra,* the Superior Court suggested a method of breaking away from the English Rule by indicating that a third party beneficiary can sue where he is especially given that right by the terms of the instrument. The significance that I gather from the opinion is that the Court merely modernized the rule to some extent by interpretation or construction without renouncing its basic principle, in that it was held that we may look for a party with a legal interest in some other part of the contract than in the premises, and, if found, that party, whether or not he be the person beneficially interested, may bring an action at law to enforce his interest. The legal right, however, must be conferred by clear expression and not by implication. This decision is readily understood in the light of the fact that Courts of this State have consistently looked upon the common law as a living thing, and at all times have endeavored to make it flexible—even at times, under the theory of interpretation or construction, have tested to the limit its elasticity.

In the case of *Glanding v. Industrial Trust Co.*, 45 *A.* 2d 553, 555, we said, "Upon the immigration of our ancestors to this country from England they adopted as a safe rule of conduct the common law of England, which they considered to be their birthright. They cherished it, and for them it

represented, so to speak, a charter of liberty." The common law thus referred to was administered by our Colonial Courts, and was indelibly written into our first Constitution 1792 under Section 10 of Article 8 thereof. "Section 10. All the laws of this State, existing at the time of making of this constitution, and not inconsistent with it, shall remain in force, unless they shall be altered by future laws; and all actions and prosecutions now pending shall proceed as if this constitution had not been made."

The substance of Section 10, aforesaid, has appeared in all our Constitutions subsequent to 1792, and appears in our present Constitution under Section 18 of Article 16 thereof. Thus, the common law of England as of 1792 forms the very backbone of our legal concepts, and, except where altered or changed by legislative authority, the principles and rules as laid down in the early English Reports form an integral part of our jurisprudence. These rules should be recognized and followed to the same extent as statutory law. Of course, during the passing of time we have progressed, and whenever it is found that a common-law rule in force as of the date of the adoption of our first Constitution has outgrown its usefulness, or where it is found to be archaic, and contrary to modern practice and a desire is present for the adoption of a more up-to-date philosophy, the Legislature at all times in the exercise of its wisdom is vested with the power to act.

The question presented is narrow: Should this Court renounce the English Rule and adopt in its place the American view, *Restatement of the Law of Contracts,* Vol. 1, Section 133, etc., under which a third party beneficiary is permitted to recover upon a sealed instrument impliedly made for his benefit, but to which he is not a party?

I concur with the majority in the thought that a more rational philosophy should be adopted. In fact, I approve of

the American view that permits a third party beneficiary an action upon a sealed instrument where it is clearly designated that it was made for his benefit even though he is not expressly included therein. My dissent relates solely to the method in which such a change should be made.

The majority say that in practically all of the States, except Massachusetts, the American view has been accepted. This statement I do not challenge. However, I do not find in the Constitutions of those States a provision such as appears under Section 10 of Article 8 of our Constitution of 1792, which said provision has been carried into all of our subsequent Constitutions. In other words, the common-law rule as of 1792 is without question the law in this State until the Legislature, by enactment, changes the same. The function is clearly legislative and not judicial.

Of course, if I be in error as to the state of the English Rule as of 1792, and, if in fact the case of *Dutton v. Poole, supra,* changed the English Rule as of the date of that case, 1677, then such a change would not be binding upon this Court; rather the effect would be persuasive only. It seems to make little difference to me whether or not we are bound by the state of the English Rule as I have determined it to be as of 1792, or whether the rule should be considered persuasive only. The fact remains that the law in this State is so well settled concerning an instrument or contract under seal that I feel we are bound by the doctrine of stare decisis. Necessity does not require that I deal with the cases concerning the right of action on the part of a third party beneficiary relative to a contract not under seal. *Williston on Contracts,* vol. 2, Sec. 401, p. 1152. "None of the earlier cases which allowed a right of action to one who was not a party to the contract related to contracts under seal, and where statutes have not taken away the importance of the distinction between sealed and parol contracts the rule that

one who is not a party to a contract under seal cannot sue upon it is still applied to contracts to benefit or pay a debt to a third person. But in some states the rules of the common law distinguishing contracts under seal from other written contracts have been abolished or diminished, so that it is not surprising that the distinction as to the right of a third person to sue has often been disregarded."

No penalty in this case should be set for compliance with existing standards. A statute is normally prospective in operation. It does not overthrow pre-existing rights. If the English Rule is an anachronism, it should be changed. The majority have renounced the English Rule, and by so doing they have trespassed upon the domain of legislative authority.