# Order

**Michigan Supreme Court**
**Lansing, Michigan**

January 28, 2011

141579

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

JEFF MATTHEW WASHINGTON,
      Defendant-Appellant.

SC: 141579
COA: 291217
Genesee CC: 08-023681-FH

_____/

On order of the Court, the application for leave to appeal the June 17, 2010 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

MARILYN KELLY, J. (*dissenting*).

I would reverse the judgment of the Court of Appeals. I do not believe that the police made a valid *Terry*[1] stop in this case. Consequently, their search was illegal, and the trial court was correct to dismiss the case.

The underlying facts are as follows. While on patrol in a fully marked police car, officer Williams noticed a green Buick parked on a side street in Flint. Defendant was standing near the passenger side window talking to the driver. Williams thought it looked "kind of suspicious, possibly some drug activity going on," so he turned the cruiser around and waited about a half a block away to "see if the vehicle would leave."

Although he saw nothing to satisfy his hunch, Williams decided to approach the men to see what they were doing. He pulled his cruiser in front of the Buick and blocked

---

[1] *Terry v Ohio*, 392 US 1 (1968).

it, completing a *Terry* stop.[2]  When he searched defendant's jacket,[3] Williams discovered a firearm.

He arrested defendant and charged him with carrying a concealed weapon, felon in possession of a firearm, and felony-firearm.  Defendant moved to suppress the gun on several bases.  At the hearing on the motion, Williams was the only witness.  Regarding the initial *Terry* stop, Williams conceded that he had no specific reason for believing that a drug transaction was occurring.  It was just a hunch or a general suspicion.  No drugs were discovered.

*Terry* mandates that, for police to justify intruding into a citizen's right against unlawful searches and seizures, officers must "be able to point to specific and articulable facts" warranting the intrusion.[4]  "This demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence."[5]  "[I]narticulate hunches" are not enough.[6]

The absence of any "specific and articulable facts" justifying the *Terry* stop are evident from the following concessions: (1) Williams admitted that he never saw any exchange of money or material; (2) Williams could not tell if the Buick's window were up or down; and (3) no suspicious behavior occurred during the minutes Williams watched the men from a distance.

The stop cannot be justified by the fact that Williams saw defendant making furtive movements as he walked up to the Buick.  Assuming *arguendo* that such movements would be sufficient to give rise to reasonable suspicion when he approached the Buick on foot, Williams had already completed the *Terry* stop.  He did that by blocking the Buick with his patrol car.  Reasonable suspicion acquired after the stop cannot justify a seizure that is unwarranted at the time of the stop.

---

[2] See, e.g., *United States v See*, 574 F3d 309, 313 (CA 6, 2009) (explaining that when a police officer blocks a citizen's car with the officer's car, it constitutes a warrantless *Terry* seizure because a reasonable person would not feel free to leave).

[3] At the time Williams blocked the Buick, defendant was sitting in the passenger seat.

[4] *Terry*, 392 US at 21.

[5] *Id.* at 21 n 18.

[6] *Id*. at 22.

The purpose of requiring "reasonable suspicion" before permitting police officers to make a *Terry* stop is to uphold a central purpose of the Fourth Amendment: preventing police from conducting arbitrary searches and seizures of citizens.[7] Here, all officer Williams knew before he made the *Terry* stop was that two men were talking by a parked car in a high-crime area. By his own admission, Williams did not have a specific reason for suspecting drug activity, only a hunch or general suspicion. Yet despite his continued observation of the two men, nothing additional occurred to substantiate the officer's hunch. In short, no "specific and articulable facts" existed to justify the stop.

I would reverse the judgment of the Court of Appeals and reinstate the trial court's orders granting defendant's motion to suppress the gun and dismissing the case.

ZAHRA, J., did not participate because he was on the Court of Appeals panel.

---

[7] *Schmerber v California*, 384 US 757, 767 (1966), quoting *Wolf v Colorado*, 338 US 25, 27 (1949) ("The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State. . . . '[T]he security of one's privacy against arbitrary intrusion by the police' [is] 'at the core of the Fourth Amendment' and 'basic to a free society.'").



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

January 28, 2011

_Corbin R. Davis_
Clerk

p0125