THE STATE OF DELAWARE for the Use of the Board of Trustees of the Delaware State College for the Use of Savery and Cooke, Inc., a corporation of the State of Delaware, Plaintiff Below, Appellant, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation of the State of Maryland, Defendant Below, Appellee.

THE STATE OF DELAWARE for the Use of the Board of Trustees of the Delaware State College for the Use of C. C. Oliphant & Son, a corporation of the State of Delaware, Plaintiff Below, Appellant, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a corporation of the State of Maryland, Defendant Below, Appellee.

(*October* 23, 1963.)

TERRY, C. J., and WOLCOTT and CAREY, J. J., sitting.

*Joseph A. Julian, Jr.,* for appellant State for use of Bd. of Trustees of Del. State College for use of Savery & Cooke, Inc.

*Robert W. Tunnell* and *John E. Messick* (of Tunnell and Raysor) for appellant State for use of Bd. of Trustees of Del. State College for use of C. C. Oliphant & Son.

*Albert W. James* and *Arthur J. Sullivan* (of Morris, James, Hitchens and Williams) for appellee Fidelity & Deposit Co. of Maryland.

Supreme Court of the State of Delaware.

TERRY, Chief Justice.

On or about April 18, 1958, James H. Wood, a general contractor, entered into a contract with the Board of Trustees of Delaware State College at Dover, Delaware, for certain construction work. Contemporaneous with this contract, Wood, as principal, and Fidelity and Deposit Company of Maryland, as surety, executed a labor and material payment bond in favor of the State College. In addition to containing the conditions enunciated in 29 *Del. C.* Sec. 6902, the bond contained the following provisions.

"3. No suit or action shall be commenced hereunder by any claimant,

"(a) Unless claimant shall have given written notice to any two of the following: The Principal, the Owner, or the Surety above named, within ninety (90) days after such claimant did or performed the last of the work

or labor or furnished the last of the material for which said claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the materials were furnished, or for whom the work or labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelope addressed to the Principal, Owner, or Surety, at any place where an office is regularly maintained for the transaction of business, or served in the state in which the aforesaid project is located, save that such service need not be made by a public officer."

On June 11, 1958, Wood accepted a bid submitted by plaintiff, Savery & Cooke, Inc., to furnish and erect miscellaneous iron work on the classroom and administration building. Plaintiff was not furnished a copy of the labor and material payment bond by any party. Plaintiff completed its primary obligations under its subcontract by November 25, 1959, and finishing work was completed by December 28, 1959. On April 29, 1960, plaintiff notified Wood and the architect of the default of Wood and its claim for payment; the defendant surety was notified on June 10, 1960.

When defendant surety refused to honor the claim for payment, plaintiff instituted suit in the court below. Defendant pleaded the notice provision cited above and moved for summary judgment. The lower court rejected plaintiff's contention that the notice provision was invalid and granted the motion for summary judgment; it is from this order that plaintiff has appealed to this court.

The trial court, in addition to the decision discussed above, granted the surety's motion for summary judgment in the action brought by plaintiff C. C. Oliphant and Son, Inc. on the labor and material payment bond. Since the facts in the Oliphant case are substantially identical to

those in the Savery & Cooke matter, we have consolidated both appeals for disposition by this decision. An examination of these cases indicates that the primary question raised by both appeals is the validity of the notice provision. However, the appeal of plaintiff Oliphant, in addition, presents three additional questions for consideration, which we shall first consider.

Plaintiff first contends that, assuming the validity of the notice provision, timely notice was given within the terms of this provision of the surety bond. Plaintiff's argument is predicated upon its removal and reinstallation of an exhaust fan in April of 1960. Consequently, plaintiff argues, since notice was given to the prescribed parties within 90 days subsequent to April, 1960, plaintiff has satisfied the notice requirements of the surety bond. However, the work performed by plaintiff was not done pursuant to the contract with the general contractor, but rather was performed under the terms of a separate contract executed by plaintiff with another sub-contractor. In so performing the repair work required by the subcontractor, plaintiff admittedly was required to remove certain portions of roofing which it had installed pursuant to its contract with Wood. This removal and replacement, however, was not work required under its general contract, but rather was work incidental to the work required by its separate contract with the subcontractor. Therefore, such work cannot be considered as "work or labor of [the furnishing of] the last of the material for which said claim is made," as is required by the notice provision of the labor and material payment bond. The work was not performed pursuant to the contract guaranteed by the bond, and no claim is made against the principal for the work performed. Accordingly, the April, 1960 work does not toll the operation of the 90-day notice provision.

■ Plaintiff's second contention is that the invitation for bids received by its contained a proposed labor and material payment bond which did not contain the notice provision now in issue. Accordingly, plaintiff alleges that it was misled to its detriment by reliance upon the sample form contained in the invitation for bids. However, defendant cannot be charged with responsibility for matters contained in the invitation for bids, and, absent any statutory requirements, defendant will be charged with only that liability that is expressly assumed by it in the contract of suretyship. See *City of Ocala for Use of Standard Oil Co. v. Continental Casualty Company,* 99 Fla. 736, 127 So. 326, 77 A.L.R. 8 (1930).

■ Finally, defendant, in addition to pleading the notice provision in both appeals, contends that plaintiff Oliphant is barred from recovery by virtue of the fact that plaintiff did not supply the general contractor with receipted bills. Under the terms of the prime contract, which was made applicable to subcontractors, no payment was to be made to the general contractor unless requests for payment were accompanied by receipted bills showing payment of subcontractors and material men. The evidence indicates that, despite this provision, the college authorities released monies to the general contractor without requiring these receipted bills. Specifically, the evidence indicates that plaintiff did not submit a receipted bill for the one payment which was received by it from Wood. However, no claim is made for such payment. It is obvious that plaintiff was under no obligation to give receipted bills for those claims which had not been paid, since such action would mislead both the principal and the defendant surety company. The question presented, therefore, is whether or not the surety is discharged on its labor and material payment bond by the failure of the public authorities to insist upon

their contractual right for the presentment of receipted bills. In support of its contention, defendant cites *Village of Chester v. Leonard,* 68 Conn. 495, 37 A. 397 (1897), and *Meyer v. Standard Accident Insurance Company,* 114 N.J.L. 483, 177 A. 255 (1935). Both of these cases merely stand for the proposition that the *owner itself* may not hold the surety liable subsequent to its failure to hold the prime contractor to its contractual obligations; these cases in no way indicate that the surety is discharged from its obligations on a labor and material payment bond.

The law is well-settled that any default by the public authorities will not discharge the surety from its obligation on the labor and material payment bond. See *Des Moines Bridge & Iron Works v. Marxen & Rokahr,* 87 Neb. 684, 128 N.W. 31 (1910) ; *Standard Asphalt & Rubber Company v. Texas Building Company,* 99 Kan. 567, 162 P. 299, L.R.A.1917C, 490 (1917) ; and 43 Am. Jur., Public Works and Contracts, Section 179. We, of course, express no opinion upon the ultimate validity of any claim that may be asserted by defendant surety against the public authorities for failure to insist upon this contractual requirement. Accordingly, we now turn to a consideration of the main issue in contention.

Plaintiffs contend that contracts with a compensated surety should be liberally construed in favor of the claimant. In view of the fact that claimants have no opportunity to negotiate the terms and conditions of the contract of suretyship since they are not a party to such contract, this rule of construction has been adopted in this jurisdiction. See *State for Use of Pa. R. Co. v. Aetna Casualty & Surety Company,* 4 W.W.Harr. 158, 145 A. 172 (Supreme Court, 1929). However, this rule of construction has no application where the surety has clearly and unambiguously placed limitations upon its

liability. As stated in 43 Am.Jur., Public Works and Contracts, Sec. 148: "The rule of liberal construction of the bond of a public contractor in favor of the obligee and beneficiaries of the bond does not mean that the bond is to be construed so as to extend the surety's liability beyond the terms of the contract which it has made * * *" (At P. 891). In the instant case, the provision requiring notice is clear and unambiguous, and, accordingly, if the condition is one permitted by the statute, the rule of liberal construction will not excuse plaintiffs from failing to meet the requirement of notice.

The precise question before us is whether or not the notice requirement of this bond contravenes the requirements and purpose of 29 *Del. C.* Sec. 6902. At the outset, we note that defendant and the court below have attempted to delineate two classes of bonds, i.e., "statutory" bonds and "common-law" bonds. Defendant, relying upon certain language in *Wilmington Housing Authority for Use of Simeone v. Fidelity & Deposit Company*, 3 Terry 567, 41 A.2d 826 (Superior Court, 1945); Revised, 4 Terry 381, 47 A.2d 524, 170 A.L.R. 1288 (Supreme Court, 1946), categorizes a bond given pursuant to 29 *Del. C.* Sec. 6902, as a "common-law" bond. The Superior Court, in the Wilmington Housing Authority case, did hold that the labor and material payment bond was "not a statutory bond except in the sense that the statute required a bond to be given. It must be regarded as a common law bond, enforceable as such." (41 A.2d at page 830). We note that this language was not directed to the question raised here but rather to whether or not a subcontractor has standing to sue the surety. The court used this reasoning to support its holding that the claimant had no standing to sue, and it was precisely this condition that was reversed by this court.

The court below attempted to draw the same distinction by comparing a labor and material payment bond with those bonds whose language is prescribed by statute, citing 12 *Del. C.* Sec. 1522 as an example. While it is no doubt true that the exact wording of an executor's or administrator's bond is specified by 12 *Del. C.* Sec. 1522, the obligation of the surety must be determined in light of the purposes to be served by the law requiring such bond. See *Theisen v. Hoey*, 30 *Del. C.* Ch. 269, 58 A.2d 569 (Court of Chancery, 1948). The same considerations are present in interpreting a bond issued pursuant to 29 *Del. C.* Sec. 6902.

We believe that the dichotomy suggested by the court below is an artificial and an unrealistic one. We prefer the definition given by the Supreme Court of Washington in *Duke v. National Surety Company*, 130 Wash. 276, 227 P. 2 (1924), in which the court defined a statutory bond as one "* * * taken pursuant to a requirement of a public statute." (227 P. at page 4).

Turning now to a consideration of whether or not the notice provision is permitted by the statute, defendant directs our attention to the holding of the Superior Court in *Wilmington Amusement Company v. Pacific Fire Insurance Company*, 2 Terry 294, 21 A.2d 194 (1941), in which the court construed a provision in a fire insurance contract requiring notice of loss within a specified period of time as a condition precedent to liability. This decision merely stands for the proposition that private parties who enter into a contract, with full notice of the terms and conditions thereof, will be expected to observe their contractual obligations. In the instant case, the plaintiff entered into no contractual relationship but rather furnished materials and labor in reliance upon the protection afforded him by the statute. Accordingly, the Wilmington

Amusement Company decision is not controlling here. See *Western Casualty & Guaranty Insurance Company v. Board of Commissioners,* 60 Okl. 140, 159 P. 655, L.R.A. 1917B, 977 (1916).

It is well-settled in this state that conditions placed in a bond inconsistent with the language or purpose of the governing statute may be disregarded and treated as surplusage. See *State to Use of Hazzard v. Layton,* 4 Harr. 512 (1847). Specifically, it is well-settled that a notice provision similar to the one found in the instant case, will be disregarded as inconsistent with the applicable statute. See *Forest Township v. American Bonding Company of Baltimore,* 187 Mich. 657, 154 N.W. 26 (1915) ; *Western Casualty & Guaranty Insurance Company v. Board of Commissioners,* cited supra, and *St. Paul Mercury Indemnity Company v. Koppers Company,* 95 Ga. App. 687, 99 S.E.2d 275 (1957).

The bond required by 29 *Del. C. Sec.* 6902 is designed to insure full payment for labor and materials supplied by parties such as the plaintiffs. The notice requirement, since it does not even require that the surety be notified of the default, serves no other purpose except to arbitrarily limit the liability of the defendant surety. Accordingly, it is inconsistent with the protection intended by the statute and will be treated as surplusage. Since plaintiffs had no knowledge of the notice requirement, there is no contention that plaintiffs waived the protection of the statute.

Two additional matters raised by the lower court remain for consideration. The lower court held that the 90 day notice provision in the bond was analogous to the admittedly valid requirement of notice and claim found in the Mechanics Lien Law (25 *Del. C.* Sec. 2711). Since the legislature has explicitly required filing of notice within

a specified period of time, claimants are put on notice of this requirement since all are presumed to know the requirements enunciated by law. On the other hand, the legislature did not see fit to include a notice requirement in 29 *Del. C.* Sec. 6902, and accordingly, the court must apply the principles enunciated above.

Finally, the lower court held that any disregard of the notice requirement in the surety bond would be in derogation of 10 *Del. C.* Sec. 7504, which states: "Nothing contained in this chapter shall make a recognizor, obligor, or other party liable for damages beyond the penalty of his recognizance, bond, or specialty; or in any manner extend, abridge, or alter the legal operation of any recognizance or other instrument." In holding the notice provision to be surplusage, the court is not extending the obligation of the defendant surety but rather is rendering that obligation consistent with the statutory requirements of 29 *Del. C.* Sec. 6902. As stated by the court in *Forest Township v. American Bonding Company of Baltimore,* cited supra: "By eliminating these provisions as surplusage the scope of the contract entered into between the defendant and the plaintiff is not extended, but that part of the contract which seeks to give the defendant greater rights than it would have had if the bond had been strictly in compliance with the terms of the statute is given no effect."

The judgment of the court below is reversed.