**ARGONAUT INSURANCE COMPANY,**
Plaintiff-Appellee,

v.

**TOWN OF CLOVERDALE, INDIANA,**
Defendant-Appellant.

No. 82–1268.

United States Court of Appeals,
Seventh Circuit.

Submitted Jan. 6, 1983.

Decided Feb. 9, 1983.

Rehearing and Rehearing En Banc
Denied March 22, 1983.

---

Jerdie D. Lewis, Lewis & Lewis, Terre Haute, Ind., Rexell A. Boyd, Boyd & Young, Greencastle, Ind., for defendant-appellant.

Eric A. Frey, Rosenfeld, Wolfe, Frey & Hunt, Terre Haute, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and NEAHER,* Senior District Judge.

* Of the Eastern District of New York.

POSNER, Circuit Judge.

The appeal in this diversity case requires us to decide a question of suretyship under the common law of Indiana. The essential facts are undisputed. The Town of Cloverdale, Indiana hired a contractor, HESCO, to build sewers. HESCO gave the town a performance bond in the amount of $238,000. The surety on the bond was Argonaut Insurance Company. Under its contract with HESCO, the town "agree[d] to pay the Contractor the sums herein specified in monthly installments as the work progresses upon estimates signed by the Engineer [an engineering firm the town had hired to supervise the project]," and the engineer was authorized, "at his discretion, [to] include in the aforesaid progress payments an estimate of the equipment and materials ... which has [sic] been delivered upon the site of the work, and for which receipted invoices have been delivered to the Engineers." About halfway through the project HESCO defaulted and Argonaut stepped in and hired another contractor to complete the work. Argonaut later discovered that the engineering firm had included in its progress-payment estimates, and the town had paid HESCO, $17,000 for materials delivered to the construction site for which either receipted invoices had not been submitted or "retainage" had not been deducted (the contract provided that 10 percent of each progress payment was to be withheld "as part security for the faithful performance" of the contract).

Argonaut demanded that the town pay it $17,000 in addition to the $16,000 due as the last installment payment for completion of the project. (The town had to pay Argonaut to complete the project because the cost of the project exceeded the amount of the performance bond.) The town was willing to pay Argonaut the $16,000 final installment on condition that Argonaut abandon its claim to the additional $17,000, but Argonaut refused, and sued the town for $33,000. Trial was by jury. At the close of

the evidence Argonaut moved for a directed verdict. The judge took the motion under advisement and sent the case to the jury, which hung. Twenty-seven months later the judge granted Argonaut's motion and entered judgment for $50,000—$33,000 plus interest from the date of Argonaut's demand for the $17,000 in unauthorized progress payments.

If a contract that a surety has guaranteed is altered without the surety's consent, he is discharged, on the theory that he insured only the original contract. *Indiana Telco Fed. Credit Union v. Young,* 156 Ind. App. 483, 487, 297 N.E.2d 434, 436 (1973). As a corollary to this rule, he is discharged if the obligee under the suretyship contract (the Town of Cloverdale, in this case) makes advance payments to the principal (HESCO) beyond those provided for in the contract (we postpone consideration of whether the discharge is total or partial in this situation). *Detroit Fidel. & Sur. Co. v. Bushong,* 96 Ind.App. 352, 175 N.E. 683 (1931); *United States for Use & Benefit of H & S Industries, Inc. v. F.D. Rich Co.,* 525 F.2d 760, 771 (7th Cir.1975); Stearns, The Law of Suretyship 123 (5th ed., Elder, 1951). Whether this is a true corollary may be doubted, since the fact that a prepayment is unauthorized does not mean that it breaks or alters the contract. But the corollary has an independent rationale, and therefore need not be rested on deduction. The rationale is that unauthorized advances reduce the principal's incentive to complete the contract, thereby increasing the risk to the surety, and increase the cost of the surety's substitute performance (in this case the argument would be that if the Town of Cloverdale had retained the $17,000 it erroneously paid HESCO its loss on its dealings with HESCO would have been that much less). Both parts of this rationale, however, are questionable. Arant, *Rationale of the Rule That an Obligee's Premature Payment Discharges His Surety,* 80 U.Pa.L.Rev. 842, 853 (1932). The principal's default may be and usually is unrelated to any slackening off due to unauthorized advances and may indeed be retarded rather than accelerated by them. And whether the advances increase the surety's risk depends on what the principal did with them; if he used them on the project the amount at risk to the surety may be unaffected.

Though the rule on unauthorized advances may well be just a vestige of an era when sureties were usually not compensated and therefore were treated with a judicial tenderness that they do not deserve today, see Stearns, *supra,* at 2, we have no evidence that Indiana is about to jettison the rule. But we are entitled, in light of its shaky foundations, to pay sympathetic attention to the exception that the town presses on us: a surety is not discharged by reason of an unauthorized payment made in good-faith reliance on an engineer's or architect's certificate of progress. See cases cited in Annot., *Contractor's Bond—Payment Releasing Surety,* 127 A.L.R. 10, 77 (1940); Simpson, Handbook on the Law of Suretyship 394–95 n. 10 (1950). Although we have found no Indiana cases dealing with this exception there is no reason to think the Indiana courts would reject it. Argonaut points out that it is not seeking discharge in full but only the crediting of the unauthorized payments against its obligations under the suretyship contract. However, the modern rule—for which there is ancient authority in Indiana, see *Weik v. Pugh,* 92 Ind. 382, 386 (1884); *Foster v. Gaston,* 123 Ind. 96, 106–07, 23 N.E. 1092, 1096 (1890)—is that a discharge because of unauthorized payments to the principal operates only to the extent of the unauthorized payments. See, e.g., *Central Towers Apts., Inc. v. Martin,* 61 Tenn.App. 244, 453 S.W.2d 789, 796–97 (1969); *National Union Indemnity Co. v. G.E. Bass & Co.,* 369 F.2d 75, 77 (5th Cir.1966). There is an exception for extreme cases. *Bushong,* which did not cite *Weik* or *Foster* and appears to have granted a full discharge (though the opinion in *F.D. Rich, supra,* 525 F.2d at 771, interprets it as a partial-discharge case), may have been an extreme case; this is not.

So the Town of Cloverdale seems to be within the exception. In addition, Indiana might join those states that not only do not

allow total discharge for unauthorized prepayments but do not allow even partial discharge unless the surety proves that the prepayments injured him, and that is hard to prove where—as was the case here, we shall see—the prepayments are not just pocketed by the contractor but go to buy materials that are used in the performance of the contract. Simpson, *supra,* at 399. However, there is such a paucity of Indiana authority on these questions—as a matter of fact we cannot find any recent case from any jurisdiction dealing with the effect of reliance on an engineer's or architect's certificate—that we shall also analyze this case as one of original contractual interpretation, unaided by the special rules of interpretation applied in suretyship cases.

■ The contract between the town and HESCO that Argonaut guaranteed does specify requirements that the town did not observe in making the prepayments in issue, but they appear to be for the town's protection rather than anyone else's. The contract contains a good deal of evidence, direct and indirect, that overpayments based on the engineer's estimates were not to affect the town's rights against the surety. It states that "no payment . . ., final or otherwise, shall operate to release the Contractor or his Sureties from any obligation upon or under this contract or the Contractor's Bond." It does not require the engineer to furnish the town with the receipted invoices or any other back-up materials for his estimates of the progress payments due. And it states that "all progress payments being made merely upon approximate estimates shall be subject to correction in the final estimate." Where rough estimation is allowed, payment based on an overestimate is not a contract breach or alteration of which a surety may complain. *Ruckman & Hansen, Inc. v. Contracting & Material Co.,* 328 F.2d 744, 746–47 (7th Cir.1964).

■ If this is not enough, it may be helpful to consider which party to the suretyship contract could have avoided at lower cost the event giving rise to the dispute—that is, the payment of unauthorized advances on the basis of the engineer's errors.

The idea behind this approach to contract interpretation is that if the parties to a contract had foreseen an untoward event they would have placed the risk of its occurring on the party better able to prevent it from occurring, in order to minimize the costs of the contract. And "the very office of [contract] construction is to work out, from what is expressly said and done, what would have been said with regard to events not definitely before the minds of the parties, if those events had been considered." Holmes, The Common Law 303 (1881).

■ It is unlikely that the Town of Cloverdale was the party that could avoid the unforeseen event—the overpayment of the contractor in reliance on the engineer's estimates—at least cost. There is no suggestion that it was careless in its choice of engineering firms, and therefore it would not have been liable in tort to a third party for the firm's negligence. The firm was an independent contractor rather than an employee, and a principal ordinarily is not liable for the torts of an independent contractor, because it has no responsibility, and usually no competence, to supervise his work. *Smith v. P. & B. Corp.,* 386 N.E.2d 1232, 1235 (Ind.App.1979). This observation is relevant to deciding whether the town or the insurance company was in a better position to prevent the engineer's errors. The town is not in the construction business and there was no reason for it to think it ought to verify the engineering firm's estimates. But Argonaut is in the business of insuring construction contracts and if it was unhappy with the town's choice of engineers, or with the delegation to the engineering firm of responsibility for calculating the progress payments that were due, it did not have to agree to insure the contract. Probably it appreciated the risk and consequences of an engineer's error better than the Town of Cloverdale did and was therefore in a better position to demand changes in the contract that would have reduced the risk.

■ Another consideration is that although the engineer failed to demand receipted invoices, as required by the contract, the materials for which HESCO had

received $17,000 in unauthorized advances not only were delivered to and stored on the site but were used by Argonaut's contractor in completing the job after HESCO defaulted. Their use reduced the cost to Argonaut of honoring its obligations under the performance bond. Maybe the benefit was less than $17,000 but the fact that there was some benefit is an additional reason for not interpreting the contract to require the town to have checked the engineer's estimates minutely.

We conclude that it was error to direct a verdict in favor of Argonaut and therefore that the judgment must be reversed. But since Argonaut's entitlement to $16,000 of the judgment, representing the final installment due to Argonaut for completion of the project, plus lawful interest, is not questioned, we shall address the town's contention that it cannot be made to pay any prejudgment interest for the period of more than two years in which the district judge was sitting on Argonaut's motion for a directed verdict. The town points out that this interest accrued only because the district judge took an inordinate amount of time to rule on the motion. Nevertheless, during all this time the town has had the use of $16,000 that it concedes is due Argonaut and presumably it has been earning interest on that money—money that does. not belong to it. Argonaut is entitled to prejudgment interest on that money under principles of unjust enrichment.

Since the grant of directed verdict in Argonaut's favor was error, the judgment must be set aside. Ordinarily the sequel would be a new trial. But since this case has dragged on so long already and it is clear that Argonaut is entitled to $16,000 (plus interest) and nothing more, we direct the district court to enter judgment accordingly.

REVERSED AND REMANDED.