**RLI INSURANCE COMPANY,**
Plaintiff,

v.

**INDIAN RIVER SCHOOL DISTRICT,**
**EDiS Company, and Becker Morgan**
**Group, Defendants.**

Civil Action No. 05–858–JJF.

United States District Court,
D. Delaware.

June 3, 2008.

Harry R. Blackburn, Esquire, and John R. Shields, Junior, Esquire, of Harry R. Blackburn & Associates, P.C., Philadelphia, PA, Perry F. Goldlust, Esquire of Aber, Goldlust, Baker, & Over, Wilmington, DE, for Plaintiff.

Kevin Gerard Amadio, Esquire of Venzie, Phillips, & Warshawer, Philadelphia, PA, James S. Green, Esquire of Seitz, Van Ogtrop, & Green, P.A., Wilmington, DE, for Defendant Indian River School District.

Donald L. Logan, Esquire and Victoria K. Petrone, Esquire of Logan & Associates, LLC, Wilmington, DE, for Defendant EDiS Company.

Paul Cottrell, Esquire and Patrick McGrory, Esquire of Tighe & Cottrell, P.A., Wilmington, DE, for Defendant Becker Morgan Group, Inc.

### MEMORANDUM OPINION

FARNAN, District Judge.

Pending before the Court are Motions for Summary Judgment, filed by each of the Defendants in this action, EDiS Company ("EDiS") (D.I.88), Becker Morgan Group, Inc ("Becker Morgan") (D.I.91) and Indian River School District ("Indian River")(D.I.89). For the reasons discussed, the Court will grant the Defendants' motions.

## I. BACKGROUND

### A. Factual Background

This action arises out of performance and payment bonds issued by Plaintiff, RLI Insurance Company ("RLI Insurance"), on behalf of McDaniel Plumbing and Heating, Inc. ("McDaniel") in conjunction with McDaniel's contract with Indian River for mechanical, plumbing and automatic temperature control construction on a construction project designated as New

Sussex Central High School in Georgetown, Delaware ("the Project"), which was entered on or about August 28, 2002. Because Indian River is a public school district, the Project was governed by Delaware's State Procurement Act, 29 Del. C. § 6962, which required the execution of a performance bond for McDaniel's work on the Project. Accordingly, on or about September 5, 2002, RLI Insurance, as surety, issued performance and payment bonds (hereinafter, "the Bond") for the Project to McDaniel, for the benefit of Indian River. By reference, the Bond incorporated the terms of the construction contract between McDaniel and Indian River.

Indian River engaged Becker Morgan as project architect, and EDiS as construction manager. As architect, Becker Morgan provided Indian River with schematic design documents, design development documents, construction documents and bidding phase and construction administration phase services. (D.I. 91 at Exh. A, Art. 2.) As construction manager, EDiS provided administrative, management and related services to coordinate scheduled activities and responsibilities of the project contractors with each other and with EDiS, Becker Morgan and Indian River to manage the Project. More specifically, EDiS scheduled and conducted meetings, coordinated the sequence of construction, maintained accounting records for the Project, reviewed payment applications, recorded Project progress, and oversaw Project contractors' performances. (*See* D.I. 88 at Exh. A.)

Pursuant to the contract governing the relationship between Indian River and McDaniel, the "Standard Form of Agreement Between Owner and Contractor" (hereinafter, "the Contract"), EDiS and Becker Morgan were required to provide Indian River with information regarding Project work progress, and Project con-

tractors' entitlement to payment. After reviewing a contractor's application for payment, EDiS and Becker Morgan would issue an Application and Certificate for Payment to Indian River. The Contract states:

> The issuance of a separate Certificate of Payment or Project Certificate for Payment will constitute representations made separately by the Construction Manager and Architect to the Owner, based on their individual observations at the site and the date comprising the Application for Payment submitted by the Contractor, that the Work has progressed to the point indicated and that to the best of their knowledge, information and belief, the quality of the Work is in accordance with the Contract Documents.

(D.I. 95 at Exh. A, Art. 9.4.3.)

McDaniel began work on the Project on or about August 29, 2002. Over the next two years, Indian River made periodic progress payments to McDaniel based on EDiS's and Becker Morgan's certifications. During the course of the Project, McDaniel fell behind on its scope of work. However, EDiS and Becker Morgan continued to issue certifications for payment, and Indian River continued to issue payments to McDaniel, in reliance upon EDiS's and Becker Morgan's certification. RLI Insurance was notified in April 2004, by EDiS that McDaniel's performance under the Contract was unsatisfactory, and that McDaniel had fallen behind schedule. (D.I. 95 at Exh. B.) By letter dated July 25, 2004, RLI Insurance instructed Christian McCone, the project manager for EDiS ("Mr. McCone"), to cease issuance of any further payments to McDaniel without RLI Insurance's consent. (D.I. 95 at Exh. C.) RLI Insurance's letter was copied to Indian River. (*Id.*) However, EDiS and Becker Morgan authorized additional pay-

ments to McDaniel. According to Indian River, this payment was made by joint check to McDaniel and one of its unpaid subscribers, who refused to ship equipment to the Project until they were paid, and that RLI Insurance expressly consented to this joint payment on August 17, 2004, by letter stating that "notwithstanding [RLI Insurance's] previous directive to hold distribution of any funds, we agree with the issuance of the joint checks at this point and authorize their release." (D.I. 100 at Exh. 4.)

On October 11, 2004, Indian River terminated McDaniel's employment under the Contract for non-performance, and failure to pay subcontractors or suppliers. Indian River submitted a claim under the Bond for the completion of the Project. RLI Insurance denied the Bond, contending that Indian River had not complied with its contractual obligations by issuing payments to McDaniel in excess of the value of the work actually performed, or for work that was never performed, and filed this action for declaratory judgment, breach of fiduciary duty and negligent misrepresentation. RLI Insurance also asserted negligent misrepresentation claims against EDiS and Becker Morgan. Indian River filed a counterclaim against RLI Insurance for costs to correct and complete McDaniel's scope of work.

Pursuant to Indian River's motion for summary judgment, RLI Insurance consented to the entry of judgment in Indian River's favor as to Counts II and III of its complaint, RLI Insurance's claims against Indian River for breach of fiduciary duty, and negligent misrepresentation.

## II. LEGAL STANDARD

In pertinent part, Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party. *Valhal Corp. v. Sullivan Assocs., Inc.*, 44 F.3d 195, 200 (3d Cir.1995).

However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To properly consider all of the evidence without making credibility determinations or weighing the evidence, a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* at 151, 120 S.Ct. 2097 (internal citations omitted).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted). However, the mere existence of some evidence in support of the nonmovant will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmovant on that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). Thus, if the evidence is "merely colorable, or is not significantly probative," summary judgment may be granted. *Id.*

## III. ANALYSIS

Because the arguments made by EDiS and Becker Morgan in support of their motions are similar, the Court will consider these motions together.

### A. EDiS and Becker Morgan's Motion for Summary Judgment

#### 1. *Parties' Contentions*

Defendants EDiS and Becker Morgan have filed for summary judgment on RLI Insurance's claims against them for negligent misrepresentation. Both EDiS and Becker Morgan contend that the economic loss doctrine precludes a plaintiff who has suffered only economic losses from recovering in tort, and, since RLI Insurance has suffered only economic losses, RLI Insurance is barred from bringing a negligent misrepresentation claim against them.

RLI Insurance contends that its negligent misrepresentation claims against EDiS and Becker Morgan were brought under the exception stated in Section 552 of the Restatement (Second) of Torts, which allows tort claims against defendants (1) who have supplied information to the plaintiff for use in business transactions with third parties, and (2) who are in the business of supplying information. *Christiana Marine Serv. Corp. v. Texaco Fuel and Marine Marketing,* C.A. No. 98C–02–217WCC, 2002 WL 1335360, at *5 (Del.Super. June 13, 2002). EDiS and Becker Morgan contend that this exception to the economic loss doctrine does not apply, since EDiS and Becker Morgan are not in the "business of supplying information," and any information exchanged was ancillary to the construction of a tangible product.

EDiS contends that, as the Project construction manager, its responsibilities were limited to "administrative, management and related services," and that any information transmitted by EDiS was incidental to the management services required by the Construction Manager Contract. (D.I. 88 at 7.) EDiS also contends that RLI Insurance's claim is barred by EDiS's contract with Indian River, which states, "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either Owner or Construction Manager." (D.I. 88 at Exh. A, ¶ 10.7.)

Becker Morgan contends that as the supplier of drawings, plans and specifications for the Project, any information it supplied was ancillary to the purposes for which Indian River engaged Becker Morgan: the construction of a tangible building. Becker Morgan also contends that the language governing the contractual relationship between the parties makes obvious that Becker Morgan owed no duty to RLI Insurance or McDaniel, and that Becker Morgan did not intend that information it provided to Indian River be relied upon by RLI Insurance. Becker Morgan points to Section 9.7 of the contract between Becker Morgan and Indian River which states, "Nothing in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against the Owner or Architect." (D.I. 91 at Exh. A.) Becker Morgan contends "it would be antithetical for RLI Insurance to claim damages due to its reliance upon Becker Morgan's proper performance under a contract which expressly disclaims any cause of action for that very reliance." (D.I. 91 at 8.)

In response to both parties' contentions, RLI Insurance contends that EDiS and Becker Morgan were engaged to provide a number of services, at least one of which

was "purely the provision of information." (D.I. 95 at 9.) RLI Insurance contends that its negligent misrepresentation claims are based entirely on those aspects of EDiS's and Becker Morgan's work limited to providing information. RLI Insurance admits that, EDiS's and Becker Morgan's primary roles on the Project may not have been the supply of information. However, RLI Insurance contends that because its claims against EDiS and Becker Morgan are based solely and exclusively on their roles as information providers, the Court should broadly construe Section 552, and hold that a defendant need not be exclusively an information supplier where the claim arises solely from that aspect of its work limited to producing information. RLI Insurance also contends that its claims against EDiS and Becker Morgan are not barred by their respective contracts with Indian River because RLI Insurance is not claiming third-party beneficiary status under these contracts, but instead asserting claims based upon the Section 552 exception.

### 2. Discussion

■ "The economic loss doctrine is a judicially created doctrine that prohibits recovery in tort where a product has damaged only itself (i.e., has not caused personal injury or damage to other property) and the only losses suffered are economic in nature." *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del.1992). The parties do not dispute that RLI Insurance seeks to recover only economic losses. Thus, RLI Insurance's claim must fall within the negligent misrepresentation exception to the economic loss rule to avoid summary judgment.

The Restatement of Torts provides an exception to the economic loss rule, which has been adopted by the Delaware state courts. *Guardian Constr. Co. v. Tetra Tech Richardson, Inc.*, 583 A.2d 1378

(Del.Super.1990). The Restatement provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Restatement (Second) of Torts* § 552.

■ In order to sustain a claim under Section 552, a plaintiff must show: (1) the defendant gave false information to the plaintiff for use in business transactions with third parties; (2) the plaintiff justifiably relied upon the false information; (3) the defendant failed to exercise reasonable care in obtaining or relaying the information; and (4) the defendant intended that the plaintiff rely upon the information. *Rose Heart, Inc. v. Ramesh C. Batta Assocs., P.A.*, C.A. No. 92C–10–138, 1995 WL 562116, at *3, 1995 Del.Super. LEXIS 370, at *9 (Del.Super. Aug.15, 1995). Additionally, a plaintiff must show that "the defendant is in the business of supplying information." *Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg., Inc.*, C.A. No. 98C–02–217, 2002 WL 1335360, at *6, 2002 Del.Super. LEXIS 305, at *23–25 (Del.Super. June 13, 2002) (citing *Danforth v. Acorn Structures, Inc.*, C.A. No. 90C–JN–30, 1991 WL 269956, at *3 (Del.Super. Nov.22, 1991)).

■ To determine whether a defendant is in the business of supplying information, a court must conduct a case-specific inquiry, looking to the nature of the information and its relationship to the kind of business conducted. *Christiana Marine*, 2002 WL 1335360, at *7, 2002 Del.Super. LEXIS 305, at *26–27 (citing *Rankow v. First*

*Chicago Corp.,* 870 F.2d 356, 360 (7th Cir. 1989)). "[W]here the information supplied is merely ancillary to the sale of a product or service in connection with the sale, defendant will not be found to be in the business of supplying information for the guidance of others in their business dealings." *Christiana Marine,* 2002 WL 1335360, at *7, 2002 Del.Super. LEXIS 305, at *29 (quoting *Tolan & Son Inc. v. KLLM Architects, Inc.,* 308 Ill.App.3d 18, 241 Ill.Dec. 427, 719 N.E.2d 288 (Ill.App. 1999)).

As stated in *Danforth v. Acorn Structures:*

> Obviously, a great many businesses involve an exchange of information as well as of tangible products—manufacturers provide operating or assembly instructions, and sellers provide warranty information of various kinds. But if we ask what the product is in each of these cases, it becomes clear that the product (a building, precipitator, roofing material, computer or software) is not itself information, and that information provided is merely incidental.

C.A. No. 90C–JN–30, 1991 WL 269956, at *3 (Del.Super. Nov.22, 1991)(quoting *Rankow v. First Chicago,* 870 F.2d 356, 364 (7th Cir.1989)). Accordingly, Delaware courts have found the potential for liability when information is the "end and aim" product of a defendant's work. *Delaware Art Museum, v. Ann Beha Architects,* No. 06–481–GMS, 2007 WL 2601472, at *2 (D.Del. Sept.11, 2007) (citing *Guardian Constr.,* 583 A.2d at 1386, and *Millsboro Fire Co. v. Constr. Mgmt. Serv.,* C.A. No. 05C–06–137–MMJ, 2006 WL 1867705, at *3 (Del.Super. June 7, 2006), which lists surveyors, accountants, financial advisors and title searchers as examples of defendants who are pure information providers).

■ While EDiS and Becker Morgan did provide information to Indian River, information upon which Indian River re-lied in issuing payment to McDaniel, the Court finds that the Applications and Certificates for Payment were not the "end and aim" of the work Indian River hired EDiS and Becker Morgan to provide. Instead, the "end and aim" was the construction of the Project. The Court further finds that any information provided by EDiS and Becker Morgan within the Applications and Certificates for Payment was provided in connection with achieving completion of the Project, or, as stated by the court in *Millsboro,* was information "more aptly categorized as information incidentally supplied ... as part of the construction" of the Project. 2006 WL 1867705, at *3. Accordingly, having found that RLI Insurance's claims against EDiS and Becker Morgan do not fall within the negligent misrepresentation to the economic loss doctrine, the Court will grant EDiS's and Becker Morgan's motions for summary judgment,

**B. Indian River's Motion for Summary Judgment**

*1. Parties' Contentions*

Indian River contends that summary judgment is appropriate with respect to defenses asserted by RLI Insurance in its request for declaratory judgment. Specifically, Indian River contends that RLI Insurance's defenses based on Indian River's allegedly improper payments to McDaniel should be stricken. Indian River admits that the parties disagree as to whether and to what extent overpayments were made, but contends that the applicable law and contract afford RLI Insurance no defense regardless, since Indian River was bound by the contract to make payments to McDaniel upon certification by EDiS and Becker Morgan. Indian River contends that if an owner is required to make payment pursuant to a contract based on certifications by a third-party, the owner's

overpayments do not excuse the surety from its obligations under the performance bond, and cites case law in support of this contention. Indian River further contends that by undertaking to become McDaniel's surety, RLI Insurance assumed the inherent risk that work was neither accepted nor necessarily acceptable simply because payment was made. Indian River contends that RLI Insurance cannot assert defenses based on the notice provisions of the Bond since RLI Insurance's defenses are limited to those set forth in the State Procurement Act. Finally, RLI Insurance contends that the relevant contract documents do not require Indian River to provide seven days notice.

RLI Insurance responds that there are material fact issues concerning when Indian River knew about overpayments and/or advance payments made to McDaniel in contradiction of the Contract, and in violation of the Bond's provisions. RLI Insurance distinguishes the case law cited by Indian River, noting the owners in those cases acted in good faith, whereas here, RLI Insurance contends, Indian River acted improperly and in collusion with EDiS and Becker Morgan. RLI Insurance further contends that Indian River's overpayments were a departure from the terms and conditions of the Contract, and that RLI Insurance was prejudiced because Indian River's actions impaired RLI Insurance's collateral. RLI Insurance contends that it was prevented from exercising its rights under the Bond by Indian River's failure to allow RLI Insurance to mitigate its exposure. RLI Insurance further responds that Delaware's State Procurement Act does not prohibit RLI Insurance's claims and defenses against Indian River since the statute does not exclude or extinguish any rights that RLI Insurance has asserted in Count I of its Complaint.

In response, Indian River asserts that RLI Insurance has not presented any evidence that Indian River did not act in good faith, or that RLI Insurance suffered some prejudice as a result of any alleged overpayment. Indian River contends that RLI Insurance offers no opposition to Indian River's argument to strike RLI Insurance's defense that the contract required a seven day notice of default to McDaniel, and requests the Court enter judgment in its favor.

### 2. Discussion

#### a. Overpayments

Neither party cites Delaware authority on this issue, and therefore the Court will consider relevant case law from other jurisdictions.

A surety on a construction project provides assurance to the owner that a construction job will be completed. *In re Modular Structures, Inc.*, 27 F.3d 72, 74 n. 1 (3d Cir.1994). "If the contractor principal defaults, the surety under a performance bond performs the work, mitigates loss by its performance, and under a payment bond pays the subcontractors and suppliers." *N. American Specialty Ins. Co. v. Chichester School District*, No. 99–2394, 2000 WL 1052055, at *6 (E.D.Pa. Jul.20, 2000) (quoting *In re Modular Structures, Inc.*, 27 F.3d at 74 n. 1.) Older cases held that sureties should be granted a total discharge from their obligations in the event of overpayment. *Chichester School District*, 2000 WL 1052055, at *12. However, the modern rule regarding premature or unauthorized payments holds that, "where there has been a material departure from contractual provisions relating to payments and the security of retained funds, a compensated surety is discharged from its obligations on the performance bond to the extent that such unauthorized payments result in prejudice or injury." *Id.* The justification for this rule is that "the material departure from

the terms of the contract deprives the surety of the inducement to perform which the contractor would otherwise have, and destroys, diminishes, or impairs the value of the securities taken." *Nat'l Union Indem. Co. v. G.E. Bass & Co.*, 369 F.2d 75, 77 (5th Cir.1966).

■ However, courts have held that this defense does not apply when the owner has in good faith relied upon the certifications of its architects or engineers. *See, e.g., Argonaut Ins. Co. v. Town of Cloverdale*, 699 F.2d 417 (7th Cir.1983); *Balboa Ins. Co. v. Fulton Co.*, 148 Ga.App. 328, 251 S.E.2d 123 (1978); *Continental Casualty Co. v. Public Building Authority of City of Scottsboro*, 381 F.2d 10 (5th Cir. 1967)("It may be laid down as a general rule that payments made by the Owner to a construction contractor in accordance with the terms of the contract do not release the surety on the contractor's bond from liability to the owner."); *Payments or Advancements to Building Contractor by Obligee as Affecting rights as Between Obligee and Surety on Contractor's Bond*, 127 A.L.R. 10 ("The rule seems to be settled that where a construction contract requires, as a condition of payments to the contractor, a certificate or estimate of an architect, engineer, or other person designated in the contract, showing the amounts due, the owner is not responsible, as against the surety on the contractor's bond, for the mistakes of the architect or engineer, and the surety is not discharged from liability to the owner by reason of payments made in good faith in accordance with overestimates or erroneous certificates, although such payments exceed, in fact, the sums due under the contract.") RLI Insurance contends that this excep-

tion does not apply because Indian River's payments were not made in "good faith reliance," but instead in collusion with EDiS and Becker Morgan. However, as noted previously, RLI Insurance has adduced no evidence in support of this contention. Accordingly, the Court declines to discharge RLI Insurance from liability under the Bond for Indian River's payments made in accordance with the terms of the Contract.[1]

Additionally, even if RLI Insurance had adduced evidence of bad faith on the part of Indian River, the Court concludes that RLI Insurance cannot establish that it was prejudiced by the alleged overpayments. The only evidence argued by RLI Insurance in support of its contention that even suggests the overpayments were made knowingly and willfully concerns Indian River's 24th payment. (*See, e.g.,* D.I. 94 at Exhs. B, C, and D.) However, RLI Insurance's August 17, 2004 letter explicitly allowed for the release of these funds, since the 24th payment was a joint payment to unpaid McDaniel suppliers, and the remainder of the payment was held while the parties determined to whom to make payment. (D.I. 100 at Exh. 4.) This payment ultimately furthered RLI Insurance's interest in paying suppliers for materials necessary to complete the Contract, and the Court finds that the evidence RLI Insurance has argued is insufficient to establish prejudice. *See Ramada Development Co. v. U.S. Fid. & Guaranty Co.*, 626 F.2d 517, 522 (6th Cir.1980) (surety was not discharged where payments made in advance were made to further completion of the contract and therefore benefitted the surety). Accordingly, the Court concludes that RLI Insurance is not dis-

---

**1.** The Court is persuaded that RLI Insurance's reliance on the case of *Chichester School District*, 2000 WL 1052055, is misplaced. In *Chichester*, the overpayments at issue were a result of the school district's negligence in double paying on two applications for payment that had already been approved for payment, not payments made in good faith reliance upon an application for payment. 2000 WL 1052055, at *13.

charged from liability under the Bond by Indian River's allegedly improper payments to McDaniel, and therefore the Court will grant Indian River's motion for summary judgment on this issue.

### b. *Bond Provisions*

Pursuant to Delaware's State Procurement Act, Indian River required McDaniel to execute a performance bond for its benefit. *See* 29 Del. C. § 6962(e) and 29 Del. C. § 6927(d). The Performance Bond between McDaniel and RLI Insurance states:

> When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law Bond.

(D.I. 90 at Exh. D.)[2] Pursuant to the Procurement Act, a surety is prohibited, in an action brought on a bond required by the Act, from asserting as a defense that the bond given pursuant to this section contained a limitation or restriction not provided for by this Section. Because RLI Insurance's Bond was issued to comply with Delaware's statutory requirements, RLI Insurance cannot rely on defenses based on the Bond's terms and conditions that are inconsistent with these statutory requirements.

By its Complaint, RLI Insurance contends that, pursuant to paragraph 3.1 of the Bond, Indian River was required to arrange a pre-default conference with RLI Insurance and McDaniel.[3] In *State Board of Trustees of Delaware State College Savery and Cooks, Inc. v. Fidelity and Deposit Company of Maryland*, the Delaware Supreme Court considered whether a 90–day notice requirement of a performance bond contravened the requirements and purposes of Delaware's statute. 57 Del. 24, 31–32, 194 A.2d 858 (1963). After defining a "statutory bond" as one taken "pursuant to a requirement of a public statute," the court found the notice provision of the bond inconsistent with protections intended by the statutory requirements. *Id.* at 34, 194 A.2d 858. Having reviewed the relevant Sections invoked

---

**2.** Since the execution of the Bond at issue in this action, Section 6927(d)(9)(e) has been amended. The Section now requires that a performance bond must "be in the standard form issued by the Office of Management and Budget for this purpose." RLI Insurance contends that, because the bond form that was approved for use on the Project was the Bond issued to Indian River by RLI Insurance, the Bond was in "the standard bond form" as required by the statute. Accordingly, RLI Insurance contends, "the Court must look to the provisions of the bond itself ... to determine any limitations on claims or defenses." (D.I. 94 at 18.) The Court finds RLI Insurance's argument unpersuasive in light of the legislative history of the statute, which makes clear that this "standard form" provision did not exist in August 2002, when the Project was bid, and therefore the Bond is-

sued by RLI Insurance was not a state-designated bond form.

**3.** RLI Insurance also alleges in its Complaint that Indian River had a duty to notify RLI Insurance about problems with the Project, and to withhold payments to McDaniel that might impair RLI Insurance's collateral. These duties are not expressed by the Bond's terms, and the Court construes RLI Insurance's view of Indian River's duties to be implied. The Court finds these implied duties to be inconsistent with the terms of the Procurement Act, and will strike RLI Insurance's allegations that it is discharged from liability under the Bond by Indian River's failure to notify RLI Insurance about problems with the Project, and to withhold payments to McDaniel that might impair RLI Insurance's collateral.

here, the Court concludes that the Procurement Act does not require a pre-default conference, and any defense asserted by RLI Insurance on this basis is inconsistent with the purpose of Delaware's statutory requirements, to "indemnify and hold harmless the State and the agency from all costs, damages and expenses growing out of or by reason of the successful bidder's failure to comply and perform the work and complete the contract in accordance with the contract." 29 Del. C. § 6927(e). *See also* 29 Del. C. § 6962(d)(9)(b). Accordingly, the Court will grant Indian River's motion for summary judgment on RLI Insurance's defense that pursuant to the Bond, Indian River was required to arrange a pre-default conference with RLI Insurance and McDaniel.

### c. *Seven Day Notice of Default to McDaniel*

RLI Insurance offers no opposition in response to Indian River's argument that the Contract does not require a seven day notice of default to McDaniel, and the evidence in the record before the Court is unchallenged that the contractual provision RLI Insurance relies upon in support of its assertion that the Contract required seven days notice before termination was modified to eliminate this provision. (D.I. 90 at Exhs. A, B and C.) Accordingly, the Court will strike the allegations of Count I to the extent that RLI Insurance claims it is discharged from its obligations under the performance bond by Indian River's failure to provide pre-termination notice of default to McDaniel as required by the Contract.

## IV. CONCLUSIONS

For the reasons discussed, the Court will grant EDiS's Motion for Summary Judgement and Becker Morgan's Motion for Summary Judgment. The Court will grant Indian River's Motion for Summary Judgment against RLI Insurance, and will strike (1) RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's alleged improper payments to McDaniel, (2) RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's failure to arrange a pre-default conference with RLI Insurance and McDaniel, (3) RLI Insurance's allegation that it is discharged from liability under the Bond by Indian River's failure to provide seven days notice pursuant to the Contract; and (4) RLI Insurance's allegations that it is discharged from liability under the Bond by Indian River's failure to notify RLI Insurance about problems with the Project, and to withhold payments to McDaniel that might impair RLI Insurance's collateral.

An appropriate Order will be entered.

### ORDER

At Wilmington, the *3rd* day of June 2008, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Defendant EDiS Company's Motion for Summary Judgment (D.I.88) is **GRANTED;**

2. Defendant Becker Morgan Group, Inc's Motion for Summary Judgment (D.I.91) is **GRANTED;**

3. Defendant Indian River School District's Motion for Summary Judgment (D.I.89) is **GRANTED.**

4. Within ten days of the date of this Order, the parties shall advise the Court of any outstanding issues that remain in light of the Court's Memorandum Opinion and Order.